BIGELOW, (BATTIN v.) See Case No. 1,-108.

⸻

## Case No. 1,399.

BIGELOW et al. v. ELLIOT et al.

[1 Cliff. 28.] [1]

Circuit Court, D. New Hampshire. May Term, 1858.

PARTNERSHIP — WHAT CONSTITUTES — PARTICIPATION IN PROFITS—SHARE OF PROFITS IN LIEU OF SALARY—DORMANT PARTNER.

1. When two or more persons agree that each shall contribute capital or labor for the purpose of carrying on a business, and that the profits shall enure to their joint benefit, and be subsequently apportioned among all, they will be considered as partners with respect to third persons, although such may not have been their intention in making the agreement, and even though they may have expressly stipulated to the contrary.

2. Community of profit is the true criterion whereby to determine whether any agreement for the carrying on of business constitutes a partnership; but if one receives as a compensation for his services, or as rent, a stated portion of the profits, as a measure of the amount of his salary, or the mode of payment, he will not on that account be liable as a partner.

3. Where one participates in the profits of a business, ostensibly carried on by another, he is equally liable, when discovered, for debts of the concern, contracted during the time of such participation, to creditors without knowledge of the actual relations of the parties when the credits were given. Partnership in such cases is a conclusion of law upon the facts; but secrecy on the part of the dormant partner, and want of knowledge of the actual relations of the parties on the part of the creditor, are essential elements of the liability.

[3] [From 2 N. B. R. 557.]
[4] [From 2 N. B. R. 556, (Quarto, 170.)]
[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

4. Dormant partners, or those held to be such by mere implication of law, need not in any way give notice of the dissolution of partnership.

This was an action of assumpsit [by John Bigelow and others against William Elliot and Stanford Hovey] for goods sold and delivered, and the case was submitted to the court upon an agreed statement of facts. The plaintiffs claimed to recover of the defendants as partners in trade under the firm name of S. Hovey. Hovey did not appear, and was defaulted. Elliot appeared and pleaded the general issue. It was admitted that the defendants, on the 2d of April, 1856, entered into an agreement, which in substance provided as follows: Elliot was to furnish a stock of merchandise, consisting of watches, jewelry, and certain fancy goods, to an amount not less than two thousand dollars, and as much more as he might desire, and place the same in a store or salesroom to be provided by Hovey, and to allow him to sell at retail therefrom, upon certain specified conditions, namely, Hovey was to keep accurate entries of the sales made from the stock, rendering an account of the same as often as Elliot might desire, and pay all the money to him on demand as fast as collected; he was to be responsible for the safe-keeping and return of all the merchandise intrusted to his care as above, or the avails thereof. and of all goods sold on credit, but was not to sell any goods on credit to an amount exceeding one hundred dollars, without consent of Elliot, in writing, specifying the parties and merchandise. All the expenses of the concern, including rent, lights, fuel, clerk-hire, insurance, taxes, and other necessary incidental expenses, were to be paid from the profits of the concern, except the pay for the services and personal expenses of Hovey, for which no provision was made in the agreement. No clerk or workman was to be employed about the concern except such as were approved by Elliot. All watch-work or other jobs taken or done at or by the concern were to be set down as sales and profits, and divided as such. The net income, after paying expenses "as above," was to be equally shared between the contracting parties. Hovey could purchase, on his own account, any goods or merchandise that he might see fit, expose the same for sale, and sell in the store with Elliot's merchandise, provided that the profits on the same were equally shared "as above." Elliot was to have the privilege of selling any goods in the store to his friends and customers, or of taking any article therefrom to sell, but the profit on any article thus sold in the store was "to go to the concern," except that on musical instruments, which was to be the exclusive property of Elliot. Merchandise was to be furnished at cost. or regular six months' prices, and Hovey had the privilege of seeing the bills. A true account of all

exchange trades was to be kept, and the result of the same to be set down as trade, and the profit carried out accordingly. Finally, it was agreed that either party might terminate the contract at pleasure.

In pursuance of this agreement, Hovey hired a store in his own name and carried on business from April, 1856, to January, 1857,—Elliot's interest in the stock and business remaining a secret. During this time goods to the amount of four thousand eight hundred and sixty-six dollars and fifty-seven cents were furnished by Elliot, and Hovey put in goods to the amount of about four thousand dollars. This suit was brought to recover for goods so purchased by Hovey, and which constituted a part of the goods so put into the store by him. These goods were sold to Hovey by the plaintiffs, who were ignorant of the agreement between him and Elliot, and the purchase was made without consultation with Elliot and without his knowledge. At the time of the sale the plaintiffs had no knowledge of the existence of the written agreement, or that Elliot had any interest either in the store or the goods, and remained in ignorance of it till April, 1857, when Elliot as trustee in another suit made the disclosure. On the 12th of January, 1857. Elliot sold the balance of the goods furnished or put into the store by him to Hovey, and they made a settlement of the business done under the agreement up to the 1st of the same month. In that settlement Hovey accounted to Elliot for one half the profits of the business, deducting expenses, and gave him his note for the amount. Elliot then took a mortgage on all the goods in the store to secure his claim against Hovey. If the court came to the conclusion that the action could be maintained against both defendants, then judgment was to be entered in favor of the plaintiffs for the whole amount claimed, with interest from the date of the writ; but if the court was of the opinion that it could not be sustained against Elliot, the first-named defendant, then judgment was to be entered in his favor for his costs.

Clark & Smith, for plaintiffs.

It is not essential in all cases, to constitute a partnership, that there should be both community of interest in the capital stock and in the profits. If there is community of profit, they are partners. Story, Partn. § 27; Ex parte Hamper, 17 Ves. 404; Reid v. Hollinshead, 4 Barn. & C. 867; Smith v. Watson, 2 Barn. & C. 401; Hesketh v. Blanchard, 4 East, 144; 1 Pars. Cont. 158; Biss. Partn. 4; Doak v. Swann, 8 Greenl. 170; Cobb v. Abbot, 14 Pick. 289; Bostwick v. Champion, 11 Wend. 571. There must be a similar common interest in the losses of the concern to some extent, at least so far as they constitute a charge upon or a diminution or deduction from the profits, since the net income is alone to be shared, and there must be in all

cases a deduction of the losses to a greater or less extent, according to the agreement of the parties, in order to ascertain what are the profits. Story, Partn. §§ 19, 23, 60; Bond v. Pittard, 3 Mees. & W. 359; Gilpin v. Enderbey, 5 Barn. & Ald. 954; Cheap v. Cramond, 4 Barn. & Ald. 663; Ex parte Langdale, 18 Ves. 300. That the parties such partners is to be determined by their actual participation of the profits, which is held to require of them a participation of the losses, because it diminishes the fund from which the losses are to be paid. 1 Pars. Cont. 133; Grace v. Smith, 2 W. Bl. 998; Waugh v. Carver, 2 H. Bl. 235; 1 Smith, Lead. Cas. 821, and notes; Biss. Partn. 9. As to third persons the defendants were partners.

Morrison & Stanley, for Elliot.

Hovey's position was simply that of an agent, receiving a portion of the profits as compensation. Clark v. Reed, 11 Pick. 446; Hesketh v. Blanchard, 4 East, 144; Ex parte Hamper, 17 Ves. 403; Thompson v. Snow, 4 Greenl. 264; Wilkinson v. Frasier, 4 Esp. 182; Meyer v. Sharp, 5 Taunt. 74; Rice v. Austin, 17 Mass. 197; Miller v. Bartlet, 15 Serg. & R. 137; Loomis v. Marshall, 12 Conn. 69; Harding v. Foxcroft, 6 Greenl. 76; Mair v. Glennie, 4 Maule & S. 240; Goode v. McCartney, 10 Tex. 193; Johnson v. Miller, 16 Ohio, 431; Mason v. Potter, 26 Vt. 722; Clement v. Hadlock, 13 N. H. 185; Chandler v. Brainard, 14 Pick. 285; Knowlton v. Reed, 38 Me. 246; Muzzy v. Whitney, 10 Johns. 226; Holme's Case, 2 Lewin, Crown Cas. 256; Newman v. Bean, 1 Fost. [N. H.] 93; Judson v. Adams, 8 Cush. 556; Turner v. Bissell, 14 Pick. 192; Wilson v. Whitehead, 10 Mees. & W. 503; Pott v. Eyton, 3 C. B. 32. So in Denny v. Cabot, 6 Metc. [Mass.] 82, the question at issue is well considered, and the doctrine of Turner v. Bissell is approved. And see, also, Dry v. Boswell, 1 Camp. 329, and note; Gibson v. Stevens, 7 N. H. 352; Grace v. Smith, 2 W. Bl. 998; Blanchard v. Coolidge, 22 Pick. 151; Hoare v. Dawes, 1 Doug. 371; Bowyer v. Andersen, 2 Leigh, 550.

CLIFFORD, Circuit Justice. Partnership is usually defined to be a voluntary contract between two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a communion of the profits thereof between them. Story, Partn. § 2. Other writers define it as an agreement between two or more persons for joining together their goods, money, labor, and skill, or either or all of them, for the purpose of advancing lawful trade and of dividing the profits and losses arising from it, proportionably, or otherwise, between them. They may be divided into general and special or limited partnerships. General partnerships are properly such where the parties carry on all their trade and business for their joint benefit and profit, and it is not material whether the capital stock be limited or not, or the contributions of the parties be equal or unequal. Willet v. Chambers, Cowp. 814. Special partnerships are those formed for a special or particular branch of business, as contradistinguished from the general business or employment of the parties or one of them. When they extend to a single transaction or adventure only, such as the purchase and sale of a particular parcel of goods, they are more commonly called limited partnerships, but the appellation is indiscriminately applicable to both classes of cases. Various other subdivisions are also employed to designate the different phases of this relation, which need not be repeated, as mere definitions cannot avail much in determining the question under consideration. All such commercial and business relations are usually created by the mere act and consent of the parties, and in this they differ from corporations, which require the sanction of public authority either express or implied. Ang. & A. Corp. (4th Ed.) § 41. Such consent of the parties may be testified either in express terms or by articles of copartnership or positive oral agreement, or the assent may be tacit, to be implied solely from the acts and dealings of the parties. An implied or presumptive assent has equal operation with one that is express and determined; and it may be laid down as a general proposition, that persons having a mutual interest in the profits and loss of any business carried on by them are to be recognized and treated as partners, whatever may be the nature of the agreement under which they act, or whatever motive or inducement may prompt them to contract that relation. Decided cases have established the doctrine, that when two or more persons agree that each shall contribute capital or labor for the purpose of carrying on a trade or business, and that the profits arising therefrom shall enure to their joint benefit, and be subsequently apportioned among all, they will be considered as partners with respect to third persons, although such may not have been their intention in making the agreement. 1 Smith, Lead. Cas. (Ed. 1855,) 982. All of the writers and decided cases agree that persons engaged in trade or business may become partners as to third persons in mercantile and business transactions by a participation in the profits of the trade or business, even in cases where the participant may have expressly stipulated against some of the usual, and, as between themselves, material incidents to that relation. Difficulties frequently surround the inquiry, arising out of the peculiarities or complicated character of the stipulations, and hard cases have induced courts of justice to seek for qualifications and exceptions to the general doctrine as expounded and laid down in the early decisions at common law upon the subject. While there is no diversity of opinion in re-

gard to the general doctrine that such may be the result, some of the attempts which have been made to qualify and restrain and limit it have given rise to many inconsistent, and in some instances contradictory, decisions.

One of the earliest cases usually cited in support of the general doctrine is that of Grace v. Smith, 2 W. Bl. 998, which was decided before the Revolution. It was an action against the defendant as a secret partner with another, to whom the goods had been delivered, and who had become a bankrupt. They had recently been partners, but had dissolved, and the defendant had ostensibly retired from the firm. He retired on the terms that the stock and debts should be carried to the account of the other partner, but agreed to loan him a certain sum or let it remain in his hands for seven years, at five per cent. interest, with a certain yearly annuity for the same period. On a motion for new trial it was held, that the true criterion whereby to determine the question of liability was to inquire whether the ostensible owner agreed to share the profits with the retiring partner, or whether the latter only relied on the profits as a fund for payment; and De Grey, C. J., remarked, that every man who has a share of the profits of a trade ought also to bear his share of the loss, adding that if any one takes a part of the profit he takes a part of that fund on which the creditor of the trader relies for his payment. That principle is more satisfactorily stated in Waugh v. Carver, 2 H. Bl. 247, which was decided in 1793, and is generally regarded as the leading case upon the subject under consideration. In that case, Eyre, C. J., held, without qualification, that he who takes a moiety of all the profits indefinitely, shall, by operation of law, be made liable to losses, if losses arise, upon the principle that by taking a part of the profits he takes from the creditors a part of that fund which is the proper security to them for the payment of their debts. He also remarked to the effect that the principle as stated was the foundation of the decision in Grace v. Smith, and emphatically added, I think it stands upon the fair ground of reason. Both of these cases were cited and approved in Cheap v. Cramond, 4 Barn. & Ald. 663; and the same principle was reiterated in substantially the same language. In the case last named a merchant at home had recommended consignments to a merchant abroad, and it was agreed that the commissions on all sales of goods, recommended by one house to the other, should be equally divided, without allowing any deductions for expenses; and it was unanimously held by the court of the king's bench that this was a participation in profit, and constituted a partnership between the parties to the extent of those transactions. Abbott, C. J., in delivering judgment, stated the principle of the decision to be, that where two houses

agree that each shall share with the other the money received in a certain part of the business, they are, as to such part, partners with regard to those who deal with them therein, though they may not be partners inter se, and based it upon the fact, that each house received from the other a part of that fund on which the creditors of the other relied for the payment of their demands. This principle has also been decisively affirmed by the supreme court in Winship v. Bank of U. S., 5 Pet. [30 U. S.] 560. Marshall, C. J., said, "Partnerships for commercial purposes are necessarily governed by many general principles well known to the public, which subserve the purpose of justice, and which society is concerned in sustaining. One of these is, that a man who shares in the profit, although his name may not be in the firm, is responsible for all its debts. . . . . Acting partners are identified with the company, and have power to conduct its usual business in the usual way. This power is conferred by entering into the partnership, and is, perhaps, never to be found in the articles. If it is to be restricted, fair dealing requires that the restriction should be made known. Such stipulations may bind the partners, but ought not to affect those to whom they are unknown, and who trust to the general and well-established commercial law."

All of these cases show that community of profit constitutes the true criterion whereby to ascertain and determine whether any given agreement for the carrying on of trade or business be or be not really one of partnership; and, as a general rule, whenever it appears that two or more persons have agreed that each shall contribute capital or labor, or both combined, for the purpose of carrying on a trade or business, and that the profits shall be received on joint account, and be subsequently apportioned among all, they will be considered as partners with respect to third persons, whatever may have been their intentions when they entered into the agreement, and even though they may have expressly stipulated to the contrary. Smith, Merc. Law, (Ed. 1856.) 44.

It is not necessary, to constitute a partnership, that there should be any property constituting the capital stock which shall be jointly owned by the partners; but the capital may consist in the mere use of property owned by the individual partners separately, and it is sufficient to constitute the relation that they have agreed to share the profits and losses arising from the use of property or skill, either separately or combined. Bostwick v. Champion, 18 Wend. 183. Exceptional cases will doubtless occur, in which the general rule as stated will be clearly inapplicable, or where it may need some limitation or qualification to administer justice between the parties. It was to this view of the law that the learned judge referred, in Cheap v. Cramond, when he said that the agreement before the court was perfectly dis-

tinct from the cases put in the argument, of remuneration made to a traveller, or other clerk or agent, by a portion of the sums received by or for his master or principal in lieu of a fixed salary, which is only a mode of payment adopted to secure or increase exertion. Special cases also occur where a person may be allowed to receive a part of the profits of a business without becoming a legal or responsible partner. Thus, a party may, by agreement, receive by way of rent a portion of the profits of a farm or tavern without becoming a partner. 3 Kent, Comm. (Ed. 1858,) 33. So, to allow a factor for his commissions a percentage on the amount of sales, instead of a certain sum in proportion to the quantity of goods, does not make him a partner when it appears to be adopted merely as a mode of payment. Dixon v. Cooper, 3 Wils. 40. For the same reason, a person in trade or business may employ another as clerk or servant, and agree to pay him a share of the profits, without giving him the rights of a partner; and if he holds no interest in the capital stock, and there are no other circumstances to show any mutuality of interest between them, he will not be held liable even as to third persons, merely because he was compensated in that way. Burckle v. Eckart, 1 Denio, 342, 3 Comst. [3 N. Y.] 142; Dwinel v. Stone, 30 Me. 384. Seamen also may take a share, by agreement with the shipowner, in the profits or gross proceeds of a whale-fishery or coasting voyage by way of compensation for their services; and the responsibility of partners has never been supposed to flow from such special agreements. Hazard v. Hazard, [Case No. 6,279;] 3 Kent, Comm. (Ed. 1858,) note a, p. 34. All of these citations, and many others of a kindred character, are exceptional cases, resting upon special circumstances which take the matters in controversy out of the operation of the general rule as laid down in the principal case. Attempts have also been made to ingraft other qualifications on the general doctrine, in regard to which there is still considerable diversity of opinion. Applying the exceptional principle, that a contract which merely created a debt without conferring an interest in the profits of a trade or business may not, under special circumstances, constitute a partnership, as in case of a mere factor, agent, or clerk, courts of justice in some jurisdictions have held that the law will never imply a partnership not contemplated by the contracting parties, not even as to third persons, on account of any participation in the profits, unless the stipulation for such participation be of a character to create an interest in the profits, as profits, so as to entitle the party to an account, and to give him a specific lien, or a preference in payment over other creditors. It was so held in effect by Wilde, J., in Denny v. Cabot, 6 Metc. [Mass.] 92. If, said the learned judge, in delivering the opinion of the court, "the defendant had stipulated for a share in the

profits, whether gross or net profits, so as to entitle him to an account, and to give him a specific lien, or a preference in payment over other creditors, and giving him the full benefits of the profits of the business without any corresponding risk in case of loss, justice to the other creditors would seem to require that he should be holden to be liable to third parties as a partner. But where a party is to receive a compensation for his labor in proportion to the profits of the business, without having any specific lien upon such profits to the exclusion of other creditors, there seems to be no reason for holding him liable as a partner even to third persons." Attention is also drawn to several other cases where the same limitation is adopted, and which rest upon the same supposed distinction, and it is insisted by the counsel for the defendant that he is not liable within the principles there laid down. On the other hand, many cases are cited by the counsel for the plaintiffs, asserting a broader and somewhat more general scope of liability, and they contend that the defendant is liable whether the principle of the decisions first named be sound or unsound. Suppose the distinction to exist, and to be well taken, strong doubts are entertained whether it furnishes any better or safer guide for the solution of this class of questions than the one which previously existed in the well-known and long-established rule laid down in the leading case. But having come to the conclusion that the present case runs clear of that distinction, whether well or ill founded, the point will not be further considered at this time.

Persons who jointly participate in the profits of trade or business, ostensibly carried on by another for his sole use and benefit within the principles already explained, are equally liable, when discovered, with the ostensible and active owner, to all creditors of the concern whose debts were contracted during the time of such participation, without knowledge of the same, or of the actual relations between the parties at the time the credit was given, and that liability exists, notwithstanding the parties may have privately stipulated that they shall not be partners, and in contemplation of law really are not such as between themselves. Secrecy on the part of the dormant partner, and want of knowledge of the circumstances of the case, and of the actual relations of the parties, on the part of the creditor, are therefore essential elements of the liability. Dormant or secret partners are held liable under such circumstances, partly on the ground that every man who has a share of the profits of a trade ought also to bear his share of the loss, and partly on the ground of policy and necessity, to prevent bad faith in secret arrangements; as all experience has shown that, if the rule were otherwise, third persons might be exposed to numberless frauds. In such cases partnership is a conclusion of law arising out of the

facts and circumstances of the transaction; and if the creditor has full knowledge of the circumstances, and of the actual relation of the parties, no such implication will arise. As a general rule, parties are allowed to regulate their own agreements in their own way; and if they are fairly and understandingly made, courts of justice will not interfere to prevent their being carried into effect according to their intentions, unless they contravene some principle of public policy or some positive rule of law. Parties may enter into business arrangements, and participate in the profits, under stipulations that such participation shall not constitute them partners, or render them liable as such; and if their agreements are so framed as clearly to express that intention, the law, as a general rule, will hold them bound by their terms and conditions; and no reason is perceived why any different rule should prevail in respect to third persons dealing with them, who have full knowledge of the stipulations, and of the actual relations which they sustain to each other. To all such creditors there is no dormant or secret partnership or secret arrangement, and to all such there are no circumstances or elements in the case out of which the implication of partnership can arise, and consequently the parties, under such circumstances, as to such creditors, ought not and cannot be held to be partners. Courts of justice have sometimes held that something less than knowledge of the circumstances and of the actual relations of the parties, on the part of the creditor, will be sufficient to defeat a recovery in cases of alleged partnership by implication of law. It is said that it will be sufficient to defeat a recovery in the case supposed, if it appear that the creditor was informed of such facts and circumstances as would induce a man of ordinary care and prudence to suspect that such was their actual relation, or such as would lead a reasonably prudent and cautious man to make inquiry as to the truth of the fact.

Attempts were made, and at one period with very general success, to incorporate that rule into that part of the commercial law which has respect to the rights and obligations of indorsers of bills of exchange and promissory notes, and many courts of justice held that indorsers were not liable to holders for value where it appeared that the latter, at the time of the transfer, had knowledge of such facts and circumstances as ought to have excited the suspicions of a prudent and careful man; and. accordingly, the party otherwise liable might set up equities as between himself and the antecedent parties to the paper on the exhibition of that proof. Gill v. Cubit, 3 Barn. & C. 466; 3 Kent, Comm. (Ed. 1858,) 103. Twelve years' experience under the rule was sufficient to satisfy the court which first adopted it that it was unsafe, inexpedient, and impracticable, and in some jurisdictions at least

the last remnant of the rule has been shaken off. Goodman v. Harvey, 4 Adol. & E. 870; Goodman v. Simonds. 20 How. [61 U. S.] 343; Chit. Bills, (12th Ed.) 257.

All the reasons urged against the rule in its application to bills of exchange and promissory notes appear to apply with equal force against its adoption in cases like the one under consideration. Nothing less than proof that the creditor had knowledge of the circumstances and of the actual relations of the parties can meet the exigency of such a defence; and the question whether he had such knowledge or not, like other disputed questions of scienter, must be submitted to the jury under proper instructions from the court. Each partner is the accredited agent of the company, and, as such, has authority to bind the whole within the scope of the partnership business, either by the purchase of goods or the borrowing of money to pay the debts or carry on the business, or for the selling, pledging, mortgaging, or assigning the property and effects on hand. That consequence arises from the fact that when a partnership is formed for a particular purpose it is understood to be in itself a grant of power, at least to the acting members, to transact its business in the usual way. If that business be to buy and sell. then, says Marshall, C. J., the acting member buys and sells for the company, and every person with whom he trades in the way of business has a right to consider, and the law adjudges, that he represents the actual company, whoever may compose it. Winship v. Bank of U. S., 5 Pet. [30 U. S.] 560; Smith, Merc. Law, 73, 74; Pars. Merc. Law, 174. When the partnership is dissolved, notice published in the journals will be sufficient for the public, but express notice ought to be given to those who have dealt with the firm, which is generally given by a circular letter. Godfrey v. Turnbull, 1 Esp. 371; Kirwan v. Kirwan, 2 Cromp. & M. 617; Newsome v. Coles, 2 Camp. 617. Dormant partners, or those held to be such by mere implication of law. need not give such notice in any way, for the reason which will presently be stated. Evans v. Drummond, 4 Esp. 89; Grosvenor v. Lloyd, 1 Metc. [Mass.] 19. Whether dormant partners, who are held to be such as between the parties, and known to the public as sustaining that relation, can be relieved from responsibility for future debts without giving such notice, need not now be determined. Evans v. Drummond, 4 Esp. 90; M'Iver v. Humble, 16 East, 168; Carter v. Whalley, 1 Barn. & Adol. 11. Notice is not required in the case of a partnership implied by law, for the reason that liability to creditors for future contracts ceases when knowledge of the circumstances and actual relations of the parties begins; and as to dealers with the company, who have no knowledge of their relations to the business, the bona fide discontinuance of those relations will be sufficient to terminate the im-

plication on which the liability arises. Applying these principles to the facts of this case as they have been agreed by the parties, it is clear that the plaintiffs are entitled to recover. According to the agreed statement of facts, the plaintiffs were guilty of no laches in giving the credit. as they never had any knowledge of the circumstances or actual business relations of the defendants until about the time this suit was commenced,.and consequently now have the right in contemplation of law, inasmuch as those relations have since been discovered and are now proved or admitted, to regard the defendant, who is defaulted and who purchased the goods and contracted the debt, as having represented the other defendant as well as himself ˙when the purchase was made and the credit given. All of the stipulations which testify their relations were secret, and no one except the defendant, who fails to appear, knew that any one besides himself had any interest either in the store or goods. He transacted all the business, and ostensibly was the sole person interested in the ownership of the goods or in the profits of "the concern." and yet every purchase and sale was made under the secret stipulation in writing that the net income or profits, after paying all the expenses of the concern, including rent, lights, fuel, clerk hire, insurance, taxes, and other necessary incidental expenses, should be equally shared between the contracting parties. Goods to the amount at least of two thousand dollars were to be furnished by this defendant, and the other defendant was to furnish the store, and was at liberty to furnish goods to any amount he might see fit; and in case he exercised that privilege, it was expressly stipulated that the profits of the same should be shared in the same way. As a matter of fact, both defendants furnished goods, and the agreed statement shows that the respective amounts were about equal. While it was contemplated that Hovey should ostensibly transact the business and appear to the public as the sole person interested, it was carefully stipulated that the other defendant should have the privilege of selling any goods in the store to his friends and customers, and that the profits of the same, musical instruments only excepted, should go to the concern and be equally shared between them. This defendant also stipulated for an account, and· the agreed statement shows that the other defendant. on the 12th of January, 1857, rendered to him a full account of the business, pursuant to the terms and conditions of the written stipulation, and the moiety of the profits belonging to this defendant were included in the note given at the settlement by the other defendant.

On this state of facts not a doubt is entertained that these defendants were partners as to third persons within the principles already explained, and equally so, even if it be admitted that a participation in the profits is not sufficient to constitute that relation, unless it be of a character to entitle the alleged dormant partner to an account, and to give him a specific lien or a preference in payment over other creditors; and accordingly there must be judgment for the plaintiffs against both defendants for the amount specified in the agreed statement, and for their costs.