James J. Marlett *vs.* Moses M. Jackman & others.

A surviving partner cannot be held responsible on a contract made without his assent or knowledge by another partner, after the firm has been dissolved by the death of one of its members, although no notice of its dissolution has been given to the person with whom the contract was made.

In an action on a promissory note given in the name of a firm by a surviving partner, the other surviving partners, under an answer which avers that the firm had expired and was dissolved before the note was given, may prove that the partnership had been dissolved by the death of one of its members.

Contract upon a promissory note for $1000, dated Boston, June 30, 1855, signed " Jackman, Hathaway & Co.," payable to the order of William J. Marlett in six months after date, at the Bank of Syracuse, New York, and by him indorsed to the plaintiff. Jackman and Hathaway alone defended the action, and in their several answers set forth, amongst other things, that if any such firm as Jackman, Hathaway & Co. ever existed, it had expired and was dissolved before the note was given.

At the trial in the superior court, before *Allen*, C. J., the plaintiff introduced evidence tending to show that in 1852 and 1853 the defendants Jackman and Hathaway, together with Ivory

Chick and H. B. Leach, were partners under the firm of Jackman, Hathaway & Co., and engaged in constructing railroads; and that the note in suit was signed with the name of the firm by said Leach at Boston on the day of its date. The defendants introduced evidence to show that Ivory Chick died on the 8th of March, 1854, and asked the court to instruct the jury that his death dissolved the firm, and that they were not liable to pay a note signed by Leach afterwards without their consent or knowledge. The plaintiff contended that this ground of defence was not open to them under their answers. The judge ruled that the pleadings were sufficient to authorize this defence, but instructed the jury that although Chick died before the note was signed, and his death dissolved the firm, and his estate would not be liable for debts subsequently contracted by a surviving partner in the name of the firm, yet the other surviving partners would be bound by the act of Leach in signing the note in suit, unless William J. Marlett had been notified or had knowledge of Chick's death at the time of taking it.

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*S. Bartlett & J. W. Hubbard,* for the defendant Jackman.

*G. Putnam, Jr.* for the defendant Hathaway.

*T. L. Wakefield & J. Lathrop,* for the plaintiff. The plaintiff's case rests on the general rule, that if a person employs another to act as his agent, he cannot exonerate himself from liability for such agent's acts until he has given notice of the revocation of his authority. The only adjudicated exception to this rule is, where partners are citizens of different countries, between which war is declared. In such case, a notice cannot be given; and all persons are bound to take notice of a declaration of war. *Griswold* v. *Waddington,* 15 Johns. 57; S. C. 16 Johns. 438. It is not denied that the death of a partner dissolves the firm as to his estate, and that his heirs or representatives are not bound to give notice thereof in order to exonerate his estate from liability for subsequent contracts of the surviving partners. *Vulliamy* v. *Noble,* 3 Meriv. 593, 614. But this is an exception to the general rule requiring notice and depends on special reasons. No

such reasons apply to surviving partners. On the contrary, they nave the means of giving notice; the books and partnership property vest in them; they know who their creditors are, and with whom they have dealt; and having held out their partner to the world as authorized to bind them, they ought to give notice when the authority ceases; and it is believed to be the almost universal custom for surviving partners to do this. Such notice was required by the Roman civil law; Corpus Juris Civilis, Digest. Lib. 17, Tit. 2, § 10; and by the French law; 2 Troplong Societé Civile et Commerciale, 376, n., 903.

It is no answer to this position to say that surviving partners may not be aware of the death of their associate. Their knowledge or ignorance of his death is immaterial; the duty of giving notice arises from the fact that they have held out an agent as authorized to act for them, and that other parties are thus led to rely upon acts done under this sanction. And there is no reason for a distinction in this respect between a dissolution caused by the act of God and one caused by the act of one partner, or by operation of law. It is only in cases where the dissolution is by mutual consent that it can be certain that all the partners have knowledge of the fact at the moment it takes place. But there are many ways in which a partnership may be dissolved without the knowledge of all its members at the time. Yet in such cases the duty of giving notice may exist. *Pitcher* v. *Barrows*, 17 Pick. 361.

The defence relied on was not open under the pleadings. Gen. Sts. c. 129, § 20. *Bradford* v. *Tinkham*, 6 Gray, 494. *Mulry* v. *Mohawk Valley Ins. Co.* 5 Gray, 541.

BIGELOW, C. J. It is certainly somewhat remarkable that no case can be found either in this country or in England in which the question has arisen and been adjudicated whether, in case a copartnership is dissolved by death, the surviving partners are bound to give notice of such dissolution, in order to avoid a liability occasioned by the subsequent misuse of the copartnership name by one of the firm. The adjudged cases have gone no further than to hold that neither the estate of the deceased partner nor his heirs or personal representatives can

be held on a contract entered into in the name of the firm sub-
sequently to his death, although no notice of the dissolution
of the firm has been given.  *Vulliamy* v. *Noble*, 3 Meriv. 614.
*Webster* v. *Webster*, 3 Swanst. 490 & *note*.   *Caldwell* v. *Stile-
man*, 1 Rawle, 212.   *Washburn* v. *Goodman*, 17 Pick. 519, 526.
Two text writers, however, of great learning and authority have
laid down the rule that where a copartnership is dissolved by
the death of one of the copartners, no notice of the dissolution
is necessary, and that the surviving members are not bound by
any new contract entered into by one of the firm in the copart-
nership name after such dissolution, although it is made with a
person who had previously dealt with the firm and had no no-
tice or knowledge that it was terminated by the death of one
of the members.  3 Kent Com. (6th ed.) 63, 67.   Story on Part.
319, 336, 339.   The same doctrine is stated by the American
editor of Colly. Part. (3d Amer. ed.) §§ 120, 538.   In determin-
ing judicially whether this statement of the rule is correct, we
must take into consideration the nature of the relation of co-
partners between themselves and towards third persons, and
endeavor to ascertain whether the doctrine of the text writers is
supported by analogy, and consistent with the general principles
on which the law of partnership is founded.

Starting then with the admitted proposition that death works
an immediate dissolution of a firm, and that thereby the estate
of the deceased partner and his personal representatives, as well
as his share of the assets of the firm, are absolutely relieved and
absolved from any new contracts or subsequent transactions of
the surviving partners, which are not necessary to the settlement
of the joint business, the inquiry at once arises as to the effect of
such a dissolution occasioned by the act of God on the relative
rights and duties of the surviving copartners.   One of the essen-
tial elements of a contract of copartnership consists in the right
which each member has to the continuance of all his associates
as members of the firm.   If one withdraws, the copartnership
is at an end.   The *delectus personarum* lies at the foundation
of the agreement of the parties, and is one of the main con-
siderations on which it rests.   The personal qualities of each

member of a firm enter largely into the inducements which lead parties to form a copartnership ; and if the abilities and skill, or the character and credit, of any one are withdrawn, the contract between them is terminated and the copartnership is dissolved. When therefore, by the death of a member of a firm, his personal liability ceases and his estate is by operation of law absolved from all future contracts and transactions entered into in the name of the firm, it would seem to follow as a necessary consequence, that the power of the surviving copartners to bind each other by new contracts and engagements must at once cease. The copartnership would then be terminated not only as to the deceased partner and his estate, but also as to the other members of the firm. The *delectus personarum* would no longer exist. The contract of copartnership did not confer any power or authority on the several copartners to bind each other indi vidually, or to act in behalf of any number of them less than the whole. The copartnership constituted the principal ; and the several copartners were agents, not of the different persons comprising the firm, but only of all taken together and forming one body united in a community of interest for common objects. If then the members of the firm are held to be bound by a contract entered into by one of the copartners in the name of the firm after its dissolution by the death of a member, such liability does not arise or grow out of the agreement of copartnership. On the contrary, it is directly adverse to the nature and spirit of the contract between the parties. No such agency was created by the formation of the copartnership. It presents the anomaly of holding a party responsible for the act of an agent after the principal — the copartnership — had ceased to exist, and all authority to act in its behalf had been revoked by the act of God.

On what principle, then, can it be maintained that the law fastens on persons an obligation to answer for contracts en tered into in the name of a principal who has ceased to exist by one whose authority to act is absolutely terminated ? The only answer that can be made to this question by those who seek to sustain the obligation of such contracts on the surviving members of the firm is, that a duty is devolved on them to give

notice of its dissolution by the death of one of their associates, and that an omission to give such notice renders them liable in the same manner as if the copartnership had not ceased to exist. This is doubtless the rule in cases where the dissolution is effected by the voluntary act of the parties, or results from any state of facts not public or notorious in their nature, and which are more peculiarly within the knowledge of the members of the firm. But it rests on the principle, that the copartners are guilty of negligence in leaving the world in ignorance of such facts, which third persons cannot be supposed to have the means of ascertaining, and allowing them to infer that the copartnership continues, and to put faith and confidence in the name of the firm in consequence of such belief. 3 Kent Com. 66. Story on Part. § 160. In determining on which of two parties a burden or a loss is to rest, the law always seeks to ascertain whether either has been guilty of any neglect or omission, which has misled the confidence or operated to deceive the other, and requires that the responsibility shall be placed on the one who has failed to do that which was necessary in the exercise of due diligence or fair dealing. But this salutary principle is not applicable to the case of a dissolution of a copartnership by the death of one of its members. The cause of such a termination of the copartnership is not the voluntary act of the members. It does not result from any private transaction between them, nor from any occurrence or fact peculiarly within the knowledge of the surviving members of the firm. On the contrary, the death of a copartner may often occur under circumstances in which the knowledge of the event may not come to his associates for a long period of time. He may have been lost at sea, or have died in a distant land. In such a case, if the copartnership is held to continue as to the surviving copartners until notice of the death is given by them, it is obvious that they might be held liable on contracts entered into by one of their number long after the copartnership was dissolved among themselves by operation of law; after the estate and effects and personal credit of the deceased copartner had been withdrawn, and the power and authority of any of the firm to bind his associates had been

revoked. And this, too, without any neglect or omission which could be imputed to them, and when they were in the position of innocent parties who had done no act to mislead or deceive others, and had not ever made the contract on which they are to be held liable.

To parties thus situated, the more just and reasonable rule would seem to be applicable, that where two parties stand toward each other *in æquali jure*, and neither has been guilty of any negligence or want of good faith, their respective rights must be settled by the application of the strict rule of law, without reference to any supposed equities arising from the occurrence of an event, which neither party anticipated or could prevent. Certain it is, that the reason of the rule which requires in cases of the dissolution of a firm caused by the voluntary act of the parties, or by circumstances which would necessarily come within the knowledge of the copartners but might be unknown to third persons, that notice of it should be given in order to relieve the members from future responsibility, does not apply where the copartnership is terminated by death. The true doctrine on this point is well stated by Mr. Bell, in his learned Commentaries on the Laws of Scotland. " The opinion has certainly prevailed very generally that no notice is necessary; that the partnership, according to the common course of the law, is dissolved by death; that those who deal with the company are held to know the state of their debtor; and that the publication of all deaths, according to the common custom of the world, places this sort of information within the reach of ordinary care and diligence." 2 Bell Com. (4th ed.) § 1234. The same principle is stated in a case adjudicated by the court of session in Scotland subsequently to the publication of Mr. Bell's learned treatise. " Death operates a dissolution of itself; and, being a public fact, all men are bound to know it." *Christie* v. *Royal Bank*, 1 Cases in Court of Sess. (1839,) 745, 765. In this respect, the consequences of a dissolution by death are the same as one occasioned by war between two countries of which copartners are respectively citizens. No notice is required to be given when a fact is of a public nature

25 *

*Griswold* v. *Waddington,* 15 Johns. 57; S. C. 16 Johns. 438. Nor can it make any difference as to this liability of the survivors, that they knew of the death of their copartner and omitted to give notice of it to the person with whom the new contract was made.  As the fact of death was not in its nature private or confined within the knowledge of the members of the firm, the presumption is that third persons also had notice of it. Therefore the liability of survivors upon a new contract, not entered into by themselves, but by one of their associates without their knowledge or assent in the name of the firm, cannot be made to depend on the question whether they had previous notice of the death.   They ought not to be held liable for omitting to give notice of that which others are supposed to know. And although the member of the firm who actually enters into a contract may be responsible, as upon a contract made by himself individually, or on the ground that by making it in the name of the firm after its dissolution, he by implication represented a fact to be true which he knew to be false, or which he did not know to be true, and thereby caused loss or injury to an innocent third party, there is no good reason for holding the other copartners liable, who have remained passive and done no act by which third parties have been deceived or misled, or induced to change their position or to part with their property.

The doctrine which we have stated is the only one which is consistent with the law of agency, of which the rules regulating the acts of copartners form an important branch.   So far as a copartner acts for the firm in transactions with third persons, he is only an agent; and his rights, duties and obligations are governed by the same principles as those which are applicable to ordinary agents who have no interest in common with their principals.   By the well settled rule of the common law, the authority of an agent is determined by the death of his principal, whether the fact of death is known or not; and no notice s necessary to relieve the estate of the principal of all responsibility, even on contracts into which the agent had entered with third persons who were ignorant of the death of the principal. Those who deal with agents are held to assume the risk that his

authority may be terminated by death without notice to them. Story on Agency, § 488. *Blades* v. *Free,* 9 B. & C. 167. *Smout* v. *Ilbery,* 10 M. & W. 1. *Campanari* v. *Woodburn,* 15 C. B. 400. On the other hand, if the agency is terminated by the act of the principal, he is required to give notice of the revocation of authority in order to relieve himself from responsibility; because having held the agent out to the world as authorized to act in his behalf, it would be a breach of good faith to permit innocent parties to deal with him in ignorance of a fact which could not be known to them without notice. It would certainly be a strange inconsistency in the law, if a different rule was applicable to an agency arising out of a contract of copartnership, when it is terminated by a like cause. The reason on which the rule is founded applies with equal force, whatever may have been the nature of the authority under which the agent acts.

Nor are we able to see any good reason for imposing a duty of giving notice of the dissolution of a firm on surviving copartners which is not applicable to the representatives of the deceased partner. But the rule is well settled that no notice need be given by the latter to relieve his estate from liability on future contracts. If it be said that the surviving copartners are in possession of the books and papers of the firm, and therefore have access to means of ascertaining the names of persons with whom the firm have dealt, which are not within the reach of the heirs or representatives of the deceased copartner, the answer is, that this does not afford any ground for exempting the latter from the duty of giving public notice of the dissolution of a firm by death by advertisement in a gazette, nor of informing the surviving copartners, whom they must be supposed to know, of the fact. It would seem to be quite as reasonable that notice of the death of one of the copartners should be given to th surviving members of the firm by the heirs or personal represen tatives of the deceased, before his estate is discharged from all claim for contribution or aid in performing contracts entered into by the surviving copartners before they received notice of his death, as that they should be required to give notice to third persons before they can be exempted from liability. But no

such notice is required. The copartnership ceases immediately on the death of any one of its members as between all the co-partners, without any notice. This is an adjudicated point. We can see no good reason for holding that it is not also terminated as to third persons.

The case of *Pitcher* v. *Barrows*, 17 Pick. 361, cited for the plaintiff, has no bearing on the question at issue in this case. The dissolution in that case was effected by the conveyance by one copartner of his share and interest in the firm to his copartners. It was a private transaction, known only to the members of the firm, of which third parties could have no notice until it was made public by those who were alone cognizant of it. The true distinction is not that no notice is requisite when the dissolution takes place by operation of law, but only when it is effected by circumstances or an event of a public or notorious nature, of which all men in the exercise of due diligence are required to take notice.

The rule of the civil law which was referred to by the counsel for the plaintiff is essentially different from that of the common law. The effect of the death of a principal under the civil law is not to revoke the authority of the agent. He can bind the estate of his deceased principal until notice of the death is given. Following out this analogy in cases of the death of a copartner, the rule of the civil law is that the heirs of the deceased copartner are liable on contracts made in the name of the firm by the surviving copartners, if they had no knowledge of the death of their associate, or if the persons with whom they dealt were ignorant of the dissolution. Pothier, Soc. §§ 156, 157.

It is not necessary in the present case to determine whether a surviving copartner who enters into a contract in the name of he firm after its dissolution by death can be held liable in any orm to the person who in good faith and in ignorance of the fact that the copartnership is at an end has acted and dealt on the credit of the firm. That is not the question which was raised at the trial. But we do decide, for the reasons we have given, that a surviving copartner cannot be held responsible on contracts made without his assent or knowledge by

Marlett *v.* Jackman & others.

another copartner after the firm has been dissolved by the death of one of its members, although no notice of its dissolution has been given to the person with whom the contract was made.

The objection made to the sufficiency of the answer is untenable. The plaintiff averred that the defendants had signed a note on which they were liable as copartners. This was the substantive fact alleged in the writ and declaration. The answer denied it in clear and distinct terms. The plaintiff was bound to prove the existence of the firm, or the liability of the defendants as members of it at the time the note was given. Therefore the allegation in the answer that the firm was dissolved when the note was given was not matter in avoidance or discharge of the cause of action, but in the nature of a special traverse of an averment in the declaration. The mode of the dissolution was matter of proof only. The defendants were not bound to aver it.

The question whether the note declared on was a contract which bound the defendants, as being given in the proper exercise of the power and authority of a surviving copartner in closing the business of the firm, does not appear to have been raised at the trial. No ruling appears to have been made on this point, and it is not properly before us on the exceptions.

*New trial granted.*