# HORNADAY v. COWGILL ET AL.

[No. 7,994. Filed May 29, 1913. Rehearing denied November 20, 1913.]

1. TRIAL.—*Conclusions of Law.*—*Exceptions.*—Exceptions to conclusions of law admit that all the facts within the issues were fully and correctly found, and where the facts are not fully and correctly found the question can be made available only by a motion for a new trial. p. 636.

2. APPEAL.—*Review.*—*Findings.*—*Striking Out Paragraphs of Reply.*—*Effect.*—Where the court's special findings disclose that certain defendants had retired from a partnership long before the transaction on which plaintiff's action was based, and that they were not at the time actual partners in the business, and such findings were unchallenged, the court's action in striking out certain paragraphs of plaintiff's reply to the answers of such defendants was not erroneous. p. 637.

3. PARTNERSHIP.—*Dormant Partners.*—*Liability for Debts.*—Where nothing was done by any member of a partnership to disclose to plaintiff or to the public that certain persons were partners, and plaintiff at no time knew of their connection with the partnership, so that he could not have been induced to transact the business on which the action is founded, because of any credit or standing they may have had, such persons were dormant partners, and were not liable to plaintiff for debts of the firm created after their retirement, even though in retiring they disposed of their interests in a manner not strictly in compliance with the partnership agreement. pp. 637, 639.

4. PARTNERSHIP.—*Dormant Partners.*—*Retirement.*—*Notice.*—A dormant partner is not bound upon retiring to give notice of his retirement, or of the dissolution of the firm, in order to escape liability for the firm's future obligations. p. 638.

5. PARTNERSHIP.—*Dissolution.*—*Death of Partner.*—Although a partnership agreement provided that the firm should continue for twenty years regardless of the death of a partner, the death of one of the partners worked a dissolution of the firm, so that business transacted after such death was with a new firm, and any partner who had retired from the business prior thereto could not be held for its subsequent obligations. p. 639.

6. PARTNERSHIP.—*Use of Corporate Name.*—*Effect.*—The status of the parties concerned in a partnership is not changed by the fact that the name under which the partnership business was transacted was suitable for a corporation, since a partnership may adopt any name and the use of a name suitable to a corporation does not affect the law governing partnerships. p. 641.

7. APPEAL.—*Review.*—*Harmless Error.*—*Ruling on Demurrer.*— The overruling of a demurrer to a pleading is not available error where there is a correct conclusion of law upon the facts. p. 642.

From Huntington Circuit Court; *Samuel E. Cook,* Judge.

Action by Peter Hornaday against Carey W. Cowgill and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*C. W. Watkins* and *Charles A. Butler,* for appellant.

*Lesh & Lesh, Sayre & Hunter* and *Frank O. Switzer,* for appellees.

SHEA, J.—Action by appellant in assumpsit for the balance of deposits made by him in The Bank of North Manchester  An amended complaint in two paragraphs was filed. The first alleged in substance, that appellant was a depositor in The Bank of North Manchester, a copartnership consisting of D. W. Krisher, Carey E. Cowgill, Harvey B. Shively, Dayton C. Harter, J. B. Harter, Jacob Harter, Jennie C. Lawrence, Elizabeth H. Mills and August C. Mills, guardian of George W. Lawrence, (all of whom were made defendants) organized November 3, 1894, under articles of agreement the material provisions of which are as follows:

"1.  The capital stock of this partnership shall be limited to the sum of Twenty-Five Thousand ($25,000) Dollars, which for convenience, shall be divided into shares of One Hundred ($100) Dollars each; and each of the undersigned partners do hereby subscribe for the number of shares and for the sums of money, respectively set opposite our names, such sums to be paid as is provided elsewhere herein.

2.  Such partnership shall begin November 3, 1894 and shall continue for the term of time of Twenty (20) years thereafter.  *  *  *,

4. For convenience in the transaction of the business of said partnership, there shall be elected from among the partners, a President and Cashier. The duties to be performed by such officers, shall be those usually incident to the offices which they occupy respectively, in the business of Banking.

5. Before the opening of business, such officers shall be chosen by a meeting of the partners, and when so chosen, shall serve until the first Wednesday of July, 1895. And thereafter, on the first Wednesdays respectively, of January and July of each year, during the continuance of said partnership, a meeting of the partners shall be held at the partnership's place of business, at which their successors shall be elected for the ensuing semi-annual term. All officers shall serve without compensation other than is specially provided for, and until their respective successors shall have been elected and qualified, according to such rules as may be adopted.

\* \* \*

8. It is further agreed that if any member of this firm shall desire to withdraw he or she shall first ask permission to do so, of all the partners, and then may do so, upon such terms as they may agree upon, and not otherwise.

9. Any partner desiring to sell all or any part of his interest, shall first give the refusal thereof, to the remaining partners, and it shall be their privilege to take the same pro rata with their previous holdings. In no case, shall any partner be permitted to sell any part of his interest to an outsider, until he shall ascertain in good faith that the remaining members of the firm will not pay as much as can be obtained elsewhere, and that no member of the firm will do so.

10. It is expressly agreed that in case of the death of any member of the firm, the law in relation to surviving partners is waived, and that the business shall be carried on the same as if such death had not occurred, until the expiration of the term of partnership, and no part of the capital shall be withdrawn by any administrator, executor, heirs, or legatees, or other personal representative; provided, that should such interest of the decedent be required to pay his debts, in course of lawful administration, then there shall be a withdrawal only, and upon such terms as the remaining members of the firm, and such administrator, executor, heirs, legatees, and personal representative may agree upon, of such capital, with profits already accrued, over and above

ascertained and probable losses; but in no case, shall there be a sale of such stock.

That on June 11, 1904, said bank failed and appellant had deposited at that time $2,600, fifty-one per cent of which has been repaid, leaving due and owing him a balance of $1,378 and interest from said date; that D. W. Krisher who signed the articles of agreement (hereafter referred to as the contract) died previous to the commencement of this suit, leaving no estate, and is not made a party to the action; that Jacob W. Harter died since the commencement of this suit, and Katherine Harter, his administratrix is made a party; that Harvey B. Shively died since this suit was commenced, and Catherine Shively, his executrix is made a party. The second paragraph is substantially the same as the first, but alleges in addition that appellees, Cowgill and Shively, denied any liability and for this reason a demand before suit would be unavailing. Demurrers to each paragraph were overruled. Thereupon appellee Cowgill filed nine paragraphs of answer, the first a general denial. Appellee Shively filed ten paragraphs of answer including a general denial. Demurrers to each paragraph of these separate answers were overruled except as to the sixth paragraph of Cowgill's answer, to which a demurrer was sustained. The court also sustained a demurrer to the seventh paragraph of Shively's answer as being similar to the sixth paragraph of Cowgill's answer. Appellant replied in seven paragraphs to each answer by Cowgill and Shively. All the paragraphs except the first, a general denial, and the third, were stricken out on motion.

Various errors are predicated upon the rulings of the court on the demurrers and the motion to strike out, all of which may be fully determined in considering the conclusions of law announced by the court upon the special finding of facts, the substance of which is as follows: That the persons named in the complaint made and entered into the articles of copartnership filed therewith; that the firm was

conducted under the name of "The Bank of North Manchester", and the articles were deposited in a safe of the bank and nothing was done by any member of the firm to disclose the contents thereof, nor the names of Cowgill or Shively to appellant or the public. By common consent Daniel W. Krisher acted as president and Dayton C. Harter as cashier, exercising exclusive control and management of the bank from its organization until it closed, and all members of the firm were residents and prominent wealthy citizens of North Manchester, except Cowgill and Shively; that in 1897, Shively sold his interest to Dayton C. Harter, and published a notice of withdrawal in the North Manchester Journal; which was his only notice, and no actual notice was given appellant; that Shively gave his note for $750 for a thirty per cent assessment, which was surrendered by Harter, when Shively sold to him, and Harter entered on the books a reduction of the capital of the bank from $25,000 to $22,500; that Shively in fact withdrew from the bank, never held himself out as a member of the firm thereafter, and when he withdrew, the bank and its other members were solvent; that business continued under the same contract until in 1899, when Cowgill sold out to Dayton C. Harter, and Harter held Cowgill's share as his own property; that Cowgill did not give any notice of his retirement, and no actual notice to appellant. After selling his interest to Harter, Cowgill did not participate in the affairs of the bank in any manner, and the bank and other members of the firm were then solvent. The business continued under the same articles until in 1901, when Jennie C. Lawrence, died, solvent, and notice of her death appeared in the North Manchester Journal. Appellant knew she died, but did not know she was a member of the firm or interested therein; that after her death neither her administrator nor her heirs assumed her place in said firm. Neither Shively nor Cowgill asked permission to sell their stock or to withdraw, from the other partners, but Krisher and Dayton C.

Harter had actual notice thereof. Cowgill did not give the refusal of his stock to the other partners as provided in the contract, and neither Shively, Cowgill nor Harter ever did anything to conceal from the other persons who had signed the contract the fact that Dayton C. Harter had purchased or that they had sold their interest to him, and retired. Appellant Hornaday commenced doing business soon after the bank started, but none of the money sued for was deposited prior to 1901 (when Jennie C. Lawrence died) and the indebtedness arose from certificates of deposit amounting to $2,600; that appellant had no knowledge of the contract at the time he deposited money in said bank and did not know that Cowgill or Shively were ever partners therein, nor that they had ever signed the articles of copartnership; that neither Cowgill nor Shively, after 1897 and 1899 ever held themselves out to the public as interested in the bank, and appellant did not deposit money upon the belief or assumption that they were partners; that on June 10, 1904, the bank made an assignment and afterwards it was declared bankrupt. Appellant has received sixty-four per cent of the amount of his deposits.

The conclusions of law were, in effect, that Cowgill and Shively were unknown or dormant partners of said firm, and as such had a right to sell their stock and retire from the firm and were not members nor bound thereafter; that being unknown or dormant partners, they are not required to give notice, and there is no basis for liability for appellant's deposits.

Judgment was rendered on the findings and conclusions that appellant take nothing as to Cowgill and Shively, and $1,670 as against the other defendants, and appellant's motion for a new trial was overruled.

It is settled in this State that exceptions to the conclusions of law admit that all the facts within the issues were

1. fully and correctly found. If the facts were not fully and correctly found, the question could only be made

available by motion for a new trial. *Kisling* v. *Barrett* (1904), 34 Ind. App. 304, 71 N. E. 507; *Blair* v. *Curry* (1897), 150 Ind. 99, 46 N. E. 672, 49 N. E. 908; *Henry* v. *Central Trust Co.* (1907), 40 Ind. App. 369, 82 N. E. 120; *Kepler* v. *Conkling* (1883), 89 Ind. 392. The overruling of appellant's motion for a new trial is not assigned as error.

Two questions are controlling in this case: Were Cowgill and Shively dormant partners, and if so, could they retire from the partnership without giving proper notice and thus escape subsequent liability? Did the death of Jennie C. Lawrence dissolve the partnership? The conclusion reached by this court with respect to these questions will determine all the questions presented upon the issues and properly assigned herein. The theory of the complaint in this case is that appellees were indebted

2. complaint in this case is that appellees were indebted to appellant because at the time he made the deposits as shown in the complaint, they were actual partners in the transaction. The special findings of fact disclose that they had retired from the firm years before, and were not, at the time in question, actual partners in the business. This finding being unchallenged, no error was committed in striking out the several paragraphs of reply, as all the proof was proper under the general denial. There is much citation of authority and earnest argument by appellant in support of the theory that appellees, having once been partners in accordance with the terms of the written agreement, and having given no notice of their retirement from the firm, and the business relations between the partnership and appellant in this case having commenced during the period of their connection with the partnership, they are to be held in this action, although the particular deposit sued for was made long after they had actually retired from the firm.

It is the judgment of this court that they were at all

3. times dormant partners. The special findings of fact disclose that nothing was done by any member of the firm to disclose the names of appellees as partners, to appel-

lant or the public; that appellant at no time knew of their connection with the partnership, and therefore could not possibly have been induced to deposit money with the bank because of any credit or standing they may have had. This being true, the great weight of authority holds that they might retire from the firm without giving notice, and without being liable for debts subsequently contracted.

"One who deals with a firm relies only on the credit of those who are the apparent members of it. A dormant partner not being an apparent member of the firm, it can not be said that reliance is placed upon his credit. Hence though he can be held, if discovered, on liabilities incurred by the firm while he was a member of it, he is not bound upon retiring to give notice of dissolution to escape liability for future obligations." Gilmore, Partnership §83. Story, Partnership (7th ed.) §159 contains this language: "In the first place, then, a dormant partner is not liable for any debts or other contracts of the firm, except for those which are contracted during the period that he remains a dormant partner. Upon his retirement, his liability ceases, as it began, *de jure,* only with his accession to the firm. The reason is that no credit is, in fact, in any such case given to the dormant partner. His liability is created by operation of law, independent of his intention, from his mere participation in the profits of the business; and therefore it ceases by operation of law, as soon as such participation in the profit ceases, whether notice of his retirement be given or not." In Parsons, Partnership (4th ed.) §320, it is said: "He (the dormant partner) was bound for any obligation incurred by the firm while he was in it, because he was then a partner in fact, and not because he was supposed to be one; in other words, he was bound because of his participation in the business and profits, and not because the creditors of the firm became so on his credit. When he leaves the firm, therefore, all the reason for holding him responsible expires; and he is not obliged to give any

notice, or take any step to withdraw a credit which never existed. * * * Whether the customer was ignorant of the partnership or not, is a question of fact, and sometimes a difficult one. But a knowledge on his part must be clearly shown, to entitle him to notice, if the partner were generally unknown." See, also, 1 Collyer, Partnership (Woods' Notes) §3; 1 Lindley, Partnership (Am. ed. 1888) 339; 3 Kent, Comm. (6th ed. 1889) *68; Story, Partnership (7th ed.) §159, *supra;* Parsons, Partnership (4th ed.) §320, *supra;* 30 Cyc. 671; *Carter* v. *Whalley* (1830), 1 B. & Ad. 11; *Pitkin & Co.* v. *Benfer* (1892), 50 Kan. 108, 31 Pac. 695, 34 Am. St. 110; *Nussbaumer* v. *Becker* (1877), 87 Ill. 281, 29 Am. Rep. 53; *Kelley* v. *Hurlburt* (1826), 5 Cow. (N. Y.) 534; *Benton* v. *Chamberlain* (1851), 23 Vt. 711; *Kennedy* v. *Bohannon* (1850), 11 B. Mon. (Ky.) 118, 120; *Grosvenor* v. *Lloyd* (1840), 42 Mass. (1 Met.) 19; *Bigelow* v. *Elliot* (1858), 3 Fed. Cas. No. 1399, 1 Cliff. 28; *Oppenheimer* v. *Clemmons* (1883), 18 Fed. 886; *Ellis' Admr.* v. *Bronson* (1866), 40 Ill. 455; *Pratt* v. *Page* (1859), 32 Vt. 13; Wade, Notice §489.

There is some authority cited by appellant which sustains the position he has taken upon this proposition, but as stated, the great weight, both by the text writers and decided cases sustains the contention of appellees.

3. This we believe to be true notwithstanding, by the terms of the contract, the members might dispose of their interest in the partnership only in a certain way, which was not strictly followed by appellees.

Subsequent to the retirement from the firm of appellees, the death of Jennie C. Lawrence, who was also a member of the partnership, occurred. We think it is clearly

5. settled that this death in the partnership brought about its dissolution, and any business transacted thereafter was with an entirely new firm, and that any partner who had retired from the business prior thereto, could not be held for subsequent debts and obligations, notwith-

standing the provisions in the written agreement that there should be a continuation of the firm or partnership for a period of twenty years.

In the case of *Andrews* v. *Stinson* (1912), 254 Ill. 111, 98 N. E. 222, Ann. Cas. 1913 B 927, the court said: "Where there are provisions in the articles of agreement or will for the continuance of the business after the death of one of the partners, it is sometimes inaccurately said that the death of the partner does not dissolve the partnership. If the business is carried on after the death of the partner under such arrangement or by the agreement of the heirs or personal representatives of the deceased, there is, in effect and in law, a new partnership, of which the survivors and the executors or heirs are the members, and the new members becoming liable, as the old, to the creditors of the firm (citing authorities). A reference to the authorities will disclose that while the above rule of law is not followed in some jurisdictions, the weight of authority, as well as sound reason, is in accord therewith."

In the case of *Karrick* v. *Hannaman* (1897), 168 U. S. 328, 334, 18 Sup. Ct. 135, 42 L. Ed. 484, the court uses this language: "A contract of partnership is one by which two or more persons agree to carry on a business for their common benefit, each contributing property or services, and having a community of interest in the profits. It is in effect a contract of mutual agency, each partner acting as a principal in his own behalf and as agent for his copartner. *Meehan* v. *Valentine* [1892], 145 U. S. 611, [12 Sup. Ct. 972, 36 L. Ed. 835]. Every partnership creates a personal relation between the partners, rests upon their mutual consent, and exists between them only. Without their agreement or approval, no third person can become a member of the partnership, either by act of a single partner, or by operation of law; and the death or bankruptcy of a partner dissolves the partnership. 3 Kent, Comm. 25, 55, 58; *Wilkins* v. *Davis* [1876], 2 Lowell 511, [Fed. Cas. No. 17,664]. So an abso-

lute assignment by one partner of all his interest in the partnership to a stranger dissolves the partnership, although it does not make the assignee a tenant in common with the other partners in the partnership property. *Bank* v. *Carrolton Railroad* [1870], 11 Wall. 624, 628, [20 L. Ed. 82] ; *Marquand* v. *New York Mfg. Co.* [1819], 17 Johns [N. Y.] 525, 528, 535.'' See, also, Parsons, Partnership (4th ed.) §§342, 343; *Stewart* v. *Robinson* (1889), 115 N. Y. 328, 22 N. E. 160, 5 L. R. A. 410; *Stanwood* v. *Owen* (1859), 80 Mass. 195; *Wilcox* v. *Derrickson* (1895), 168 Pa. St. 331, 31 Atl. 1080; *Marlett* v. *Jackman* (1861), 85 Mass. 287, 290.

The cases of *Gilmore* v. *Merritt* (1878), 62 Ind. 525; *Bisel* v. *Hobbs* (1843), 6 Blackf. 379; *Tomlinson* v. *Collett* (1834), 3 Blackf. 435; *Uhl* v. *Harvey* (1881), 78 Ind. 26; *Elverson* v. *Leeds* (1884), 97 Ind. 336, 49 Am. Rep. 458, and *Rand* v. *Wright* (1894), 141 Ind. 226, 233, 39 N. E. 447, cited by appellant from the Supreme Court of Indiana, are easily distinguishable in their facts from the case at bar. The doctrine of Lord Eldon that death works a dissolution of the partnership unless otherwise provided, is urged by appellant as being particularly applicable to this case, since the contract provided that the partnership should continue for a period of twenty years. The case of *Rand* v. *Wright, supra,* is cited in support of this doctrine. The case contains some expressions which seem to indicate approval of the doctrine of Lord Eldon. An examination of the case, however, discloses that the court did not apply the doctrine, and the expressions relied on are mere *dicta,* and cannot, therefore, be said to have given it approval.

It is earnestly contended by appellant that because the name under which this partnership transacted its business was suitable for a corporation, it would change the
6.  status of the parties. The authorities, however, are clear that a partnership has a right to adopt any name, and the use of a name suitable to a corporation does

not affect the law governing partnerships. *Carico* v. *Moore* (1891), 4 Ind. App. 20, 29 N. E. 928; *Hollbrook* v. *St. Paul, etc., Ins. Co.* (1878), 25 Minn. 229; *Crawford* v. *Collins* (1866), 45 Barb. 269; *Carter* v. *Whalley, supra.*

The following propositions may be deduced from the weight of authority: (1) A dormant partner whose connection with the firm is not discovered can only be held for liabilities incurred during the period of his connection with the partnership; (2) a dormant partner may retire from the partnership without notice, and escape future liability; (3) the death of a partner *ipso facto* works a dissolution of a partnership, notwithstanding an agreement entered into between the partners that the partnership should continue for a specified term of years. It follows therefore that the court did not err in its conclusions of law upon the facts found. The overruling of a demurrer to a pleading is not available error where there is a correct conclusion of law upon the facts. *Chicago, etc., R. Co.* v. *Yawger* (1899), 24 Ind. App. 460, 56 N. E. 50; *Woodward* v. *Mitchell* (1894), 140 Ind. 406, 408, 39 N. E. 437; *Eisman* v. *Whalen* (1906), 39 Ind. App. 350, 353, 79 N. E. 514, 1072; *Louisville, etc., R. Co.* v. *Downey* (1897), 18 Ind. App. 140, 47 N. E. 494.

No error was committed in striking out the several paragraphs of appellant's reply. We find no available error in the record. Judgment affirmed.

NOTE.—Reported in 101 N. E. 1030. See, also, under (2) 31 Cyc. 669; (3) 30 Cyc. 532; (4) 30 Cyc. 609; (5) 30 Cyc. 653; (6) 30 Cyc. 419; (7) 31 Cyc. 358. As to what constitutes partnership, see 115 Am. St. 400. As to effect of death of member of partnership, see 77 Am. Dec. 114; 86 Am. Dec. 600; 79 Am. St. 710. As to dormant partners, see 56 Am. Dec. 147. For a discussion of the business of a partnership carried on after the death of a partner, according to provisions in the partnership articles or the deceased partner's will or by arrangement with the heirs or representatives as the creation of a new partnership or a continuance of the old one, see Ann. Cas. 1913 B 933.