## STILLWELL VS. GRAY, SURV'R.

Where there is an exception to the instructions given by the court below, and all the testimony saved by bill of exceptions, but no motion for a new trial, this court will consider the testimony only so far as it may be necessary to do so, in order to test the correctness of the instructions.

An instruction, in a suit by a surviving partner, on a writing obligatory given to the firm, to which the defendant pleaded that the bond was not given to the firm, but to the deceased partner, by the firm's name; "That if the jury believe, from the testimony, that the bond in evidence was given for a debt contracted prior to the dissolution of the partnership, the name of the partnership could be used after the dissolution, and the suit maintained by the surviving partner," is not calculated to mislead—being stated hypothetically: nor abstract—there being some evidence conducing to prove the hypothesis; and is good law—one of the firm, having authority to use the firm name in the settlement of its concerns, after dissolution.

*Appeal from Pulaski Circuit Court.*

Hon. JOHN J. CLENDENIN, Circuit Judge.

FOWLER & STILLWELL, for the appellant.

BERTRAND, for the appellee.

Mr. Justice HANLY delivered the opinion of the Court.

This was an action of debt, commenced at the June term of the Pulaski Circuit Court, by the appellee, "as surviving partner of the late firm of Goodrich & Gray," on a writing obligatory, for $110 49, described as having been made by the appellant, to to the firm of Goodrich & Gray. The declaration averring, that after the execution of the writing sued on, Goodrich departed this life: with a breach negativing the payment to the appellee since, or before the death of Goodrich, or to Goodrich in his lifetime, &c.

31c

At the return term of the writ, the appellant appeared, craved ·oyer of the writing sued on, which being granted, he interposed the following plea: "That he, the said defendant, did not, in manner and form, as in said declaration is set forth, then and there make his certain writing obligatory of that date, sealed with his seal, and thereby promise one day after the date there-·of, to pay to the said Goodrich & Gray, or order, as in said declaration is alleged, the said sum of one hundred and ten dollars and forty-nine cents, with interest at the rate of ten per cent. per annum from the date thereof until paid: but that the said writing obligatory in the said declaration mentioned, was, by him, the said defendant, then and there made and delivered, and payable to one Lemuel H. Goodrich, by the name and style and description of "*Goodrich & Gray*," and not to the said Goodrich & Gray, as alleged in said declaration. Nor did the said plaintiff then and there, or at any time afterwards, have any legal interest whatever in the said writing obligatory, and of this he puts himself on the country."

The appellee moved the court to strike out this plea, which was overruled, and he, thereupon, by consent, took issue in short ·upon the record to the said plea. The pleading having been thus made up, the cause was submitted to a jury upon this issue, and the finding thereon was for the appellee, for the amount of the debt sued for, and damages by way of interest. Upon which judgment was rendered by the court.

After the evidence had been concluded on both sides, it appears from a bill of exceptions taken at the time, that the appellee asked the court to instruct the jury: "That if they believed, from the testimony, that the bond in evidence was given for a debt contracted prior to the dissolution of the partnership, the name of the partnership could be used after the dissolution, and the suit maintained by the surviving partner," which instruction was given by the court, and the appellant excepted. All the ·evidence adduced at the trial purports to be set out in the bill of exceptions, taken to the ruling of the court, as above: but as

there was no motion for a new trial, made in the court below, the evidence is improperly on the record, except so far (and for that purpose only,) as it may be applicable to the above instruction, and to show its pertinency. We shall, therefore, only state so much of the testimony, as may serve to illustrate the only question presented by the transcript for our consideration, *to wit:* the propriety of the instruction above copied. The testimony, so far, was as follows: That the said firm of Goodrich & Gray, mentioned in the declaration, had been dissolved from twelve to eighteen months previous to the date and execution of the writing sued on, and that said Goodrich died in the fall of 1854, and after his death, the said writing obligatory was found among his papers, by his administrator, and was inventoried by the administrator, as a part of the assets of the said Goodrich, and was given out by the administrator amongst other notes of the said Goodrich, for collection, to the attorney who instituted this suit. It was also proved that the appellant had acted as collecting attorney for Goodrich & Gray, (it was believed before the dissolution,) and received a large amount of notes and accounts to collect. It was also proved that the blanks, which appear to have existed at one time in the note, or writing sued on, had been filled up in the hand-writing of the appellant, and one of those blanks was filled up with the names of "Goodrich & Gray." And this was all the testimony bearing upon the instruction. The appellant excepted to the ruling of the court in giving the instruction as above, and appealed from the final judgment rendered upon the verdict of the jury, without further exception, or in any wise pointing out the precise error complained of, except as stated in his exception to the instruction, given as before stated.

We have said, that we cannot consider the evidence given at the trial, except for the purpose of determining the pertinency of the instruction given. This is deemed to be the settled and well established rule of practice of this court, as well as all appellate courts in such cases. See *Duggins vs. Watson et al.,* 15 *Ark. Rep.* 121, *et seq.*

It is insisted, on the part of the appellant, that this instruction was clearly *abstract* and *calculated to mislead*, and doubtless, did mislead the jury: averring that such instructions are erroneous, and authorize this court to grant to the party aggrieved, a new trial, or else to reverse the judgment: and several adjudications are referred to in support of this position, which we will consider.

The case of *Samuel vs. Cravens*, 5 *Eng. Rep*. 396, is to the effect, that an instruction, which is calculated to mislead the jury, is erroneous, and for which, a new trial, if asked for, should be granted; and such is the purport of the other cases to which we have been referred on this point. This, we apprehend, is undoubtedly the correct doctrine on the subject. In *Duggins vs. Watson et al., ub sup.*, WATKINS, Chief Justice, in treating upon a point in that case, similar to the one we are at present considering, said: "Where the instruction excepted to, is abstract, or assumes facts, or, upon the facts supposed by it, is bad law, or it is not applicable to the nature of the action, the error is as fully open to revision in the appellate court, without the evidence, as if the instruction be one which contradicts the pleadings. But if the objection be, that there has been no evidence adduced, to which an instruction given can apply, the party excepting, in order to overcome the presumption indulged in favor of the court below, must set out the evidence, which, if it conduce, though *in a slight* degree, to prove the hypothesis, which, as a fact, the jury might possibly find, and which it was therefore proper to submit to them, and then the instruction, if not objectionable in point of law, will be sustained: but if there be no evidence on which to base it, the giving of the instruction, though good in law, will be erroneous." Citing *Pagne vs. Joyner*, 2 *Eng. Rep*. 468; *State Bank vs. Williams. Ib*. 162.

Let us test the instruction given by the court below, by the principles of law we have stated, with the view of determining whether it is obnoxious to the objections insisted upon by the appellant.

1. Was the instruction "*calculated to mislead the jury*" in reference to the application of the facts proved, to the law pertinent to the issue before the court? We think not; for it is framed, hypothetically, thus: "that if they believe, from the testimony, that the bond," &c. No fact appears to be assumed by the instruction by intendment, or otherwise. The jury were left free and unbiased, and could not have supposed, by its tenor, that the court believed the hypothesis assumed, to be true.

2. Was the instruction *wholly abstract?* We think not, for, to our minds, there "was some evidence which conduced, in a slight degree," it is true, "to prove the hypothesis, which, as a fact, the jury might possibly find, and which it was, therefore, proper to submit to them"—as, for instance, the fact, that the bond was once in blank, and the proof that those blanks were filled up in the hand-writing of the appellant, including the names of "Goodrich & Gray." This fact alone, was one from which the jury might legitimately have inferred, when considered in reference to the character of the other evidence offered to support the issue on the part of the appellant, that the bond in question had been given in liquidation and settlement of an account due the firm of "Goodrich & Gray," before the dissolution of that firm. Beside this, the fact of the bond having been made by the appellant to the firm, after dissolution, is *prima facie* evidence of itself, independent of any other fact, that it was given in liquidation of one due the firm, during their continuance as co-partners. We think, then, that the instruction was not *wholly abstract*, and not therefore erroneous, on that account.

3. Was the instruction "good law?" We think most clearly so. *First.* Because it was clearly (after the dissolution,) competent for one of the firm to act for the firm, and in the firm's name, in liquidation. See *Chitty on Contracts*, 261. *Secondly.* Because, on dissolution of a partnership by death, the right of action to enforce partnership contracts, survives to the survivor, and does not go to or vest in the legal representatives of the deceased partner. See *Wallace vs. Fitzsimmons*, 1 *Dall. Rep.* 248; 1

*Chitty's Plead.* 19; *Penn vs. Butler,* 4 *Dall.* 354; *Nixon vs. McCarty,* 2 *Ib.* 65, 66, *note.*

In accordance with the above views, we, therefore, hold that the court below did not err in giving the instruction to the jury, as before stated. The judgment of the Pulaski Circuit Court will be affirmed with costs.

Absent, Mr. Justice SCOTT.