## JACOB STANWOOD *vs.* HENRY W. OWEN, Administrator.
## JAMES SUYDAM *vs.* SAME.

A stipulation in partnership articles, that in case of the decease of either partner the business may be carried on for one year by the survivor for the mutual benefit of both parties, does not, in case of the death of one partner, justify the allowance against his insolvent estate of a debt contracted by the survivor within the year, with one who had notice of the death.

Payments made by a surviving partner, while carrying on the partnership business, for the joint benefit of himself and of the estate of the deceased partner, pursuant to a stipulation in the partnership articles, upon an account, some items of which were contracted before and some after the death of the other partner, must be applied to the discharge of the first items.

APPEALS from decisions of commissioners of insolvency appointed by the probate court of Suffolk, disallowing claims against the insolvent estate of William O. Moody, deceased, of which the appellee was administrator. The cases were submitted to the decision of the court upon the following facts :

Moody died on the 19th of April 1855, having his domicil at Boston, and engaged in business on his separate account there, and being also partner in the firm of Harrod & Moody of New Orleans. After his decease, Harrod continued to carry on the business of that firm, by virtue of the following agreement, which was published in the New Orleans newspapers, and was also annexed to the articles of partnership (since destroyed by fire) of the former firm of Harrod, Crabtree & Moody, to which Moody contributed $10,000 capital :

" New Orleans, November 1, 1846.

" The subscribers, late partners of the firm of Harrod, Crabtree & Moody, doing business in the City of New Orleans, do agree to continue the business of the late firm under the name of Harrod & Moody, on the same terms and conditions as governed the late firm, and expressed in annexed document. And in case of the decease of either party, the business may be carried on by the survivor for one year (for the mutual benefit of both partners) from the day of said decease.

" Charles Harrod,<br>" W. O. Moody."

The firm of Harrod & Moody proved insolvent, and several of the unpaid partnership debts existing at Moody's death were allowed against his estate *pari passu* with his separate debts. But for the partnership debts, Moody's estate would have been solvent.

Stanwood's claim is upon a promissory note given by Harrod on the 25th of August 1855, in the name of the firm of Harrod & Moody, for money and merchandise furnished to him after the death of Moody was known to both parties, and used by Harrod in the partnership business.

Suydam's claim is upon an account against Harrod & Moody, the first two items of which were contracted before, and the remainder after the death of Moody, as Suydam knew; and on which Harrod, since Moody's death, has paid a sum more than sufficient to discharge the first two items.

*C. B. Goodrich,* for Stanwood. The agreement between Harrod & Moody, to carry on the partnership business for one year after the death of either, is obligatory upon the representatives of Moody, and upon his decease binds his general assets in the hands of his administrator, for debts contracted, in the business of the partnership, during the year. *Ex parte Richardson,* Buck, 202, and 3 Madd. 138. *Hankey* v. *Hammock,* Buck, 210. *Burwell* v. *Mandeville,* 2 How. 560. *Ex parte Garland,* 10 Ves. 121, 122. *Cutbush* v. *Cutbush,* 1 Beav. 184. *M'Neillie* v. *Acton,* 21 Eng. Law & Eq. 3. *Washburn* v. *Goodman,* 17 Pick. 519. Collyer on Part. (Amer. ed.) §§ 601–605. Story on Part. § 201 *a.* Civil Code of Louisiana, §§ 1095, 1822, 2853.

The agreement is that the business of the partnership shall be carried on for one year, for the mutual benefit of both parties; and is more extensive than a provision by which the assets of a partner actually employed in a partnership shall be continued in the business after his decease, for a certain period of time, and authorizes the survivor to conduct the business as it had been conducted, and to make its usual and ordinary payments and purchases. A person can bind his estate as well by acts *inter vivos,* as he can by will.

In the absence of fraud, the legal import of the partnership

agreement is not to be affected by the solvency or insolvency of Moody, at the time of making it, or afterwards.

*N. St. J. Green*, for Suydam, relied on the same grounds and authorities; and also argued that if Moody's estate could not be charged with the balance of account, it should at least be charged with the items contracted during Moody's lifetime, and should not be allowed the benefit of the payments made by Harrod, while doing business upon his own account, and wrongfully using the partnership name.

*J. L. English*, for the appellee, cited Rev. Sts. *c.* 64, § 1; *c.* 68, §§ 1, 8; Civil Code of Louisiana, §§ 1068, 1095, 1115, 1128, 1131–1134, 1136, 1137; *Louisiana Bank* v. *Kenner*, 1 Louisiana, 384; *Notrebe* v. *McKinney*, 6 Rob. (La.) 13; *Powell* v. *Hopson*, 13 La. Ann. R. 626; *Pitkin* v. *Pitkin*, 7 Conn. 307; *Thompson* v. *Andrews*, 1 Myl. & K. 116; *Kershaw* v. *Matthews*, 2 Russ. 62; *Pigott* v. *Bagley*, McClel. & Y. 569; *Downs* v. *Collins*, 6 Hare, 418; *Webster* v. *Webster*, 3 Swanst. 490, note, and *Ex parte Richardson*, *Ex parte Garland* and *Burwell* v. *Mandeville*, above cited.

These cases were decided in June 1860.

Dewey, J. 1. The objections to the allowance of these claims as debts entitled to a *pro rata* distribution of the assets of the estate of William A. Moody, represented as insolvent, and admitted to be actually so if these claims are allowed, are, as it seems to us, quite insuperable. It would operate greatly to embarrass the obvious purpose of our legislation, having in view the speedy settlement of the estates of persons deceased, and the proper distribution of the assets among the various existing creditors.

Upon the decease of an individual, his assets, as then existing, are to be taken into the custody of the proper legal representative for administration. New adventures in business are not authorized, nor can any new liabilities be created, chargeable upon the assets. Contingent liabilities arising out of former transactions may exist, for which provision should be made, and these are recognized and provided for by our statutes. But beyond these the policy of our law is, that

everything is to be adjusted upon the *status* of the property and liabilities then existing. The whole assets then applicable to the payment of debts are to be strictly applied to existing liabilities, absolute or contingent. The creditors of the deceased are not to have the payment of their debts postponed to await the result of future adventures by a surviving partner, over whom they have no control. Whatever may be the effect of a stipulation of this character upon the claims of heirs at law for their distributive shares, or of legatees under a will of a testator who has made such a contract, the court are clearly of opinion that the claims of the creditors of the deceased partner, existing at the time of his death, are paramount to the claims of new creditors whose debts have accrued by reason of contracts made by the surviving partner, acting under such a stipulation for the continuance of the copartnership, and after full knowledge by such new creditors of the death of such former member of the firm. Such new creditors know full well with whom they trade, and to whom they give credit. They may resort to the surviving partner, and perhaps to the assets in his hands as surviving partner, but not to the private estate of the deceased partner in competition with creditors existing as such at the time of his death.

This precise question is a novel one in Massachusetts, and has not, so far as we know, been the subject of a judicial opinion. In the early history of the law in other countries, there will be found conflicting views as to the validity and effect of such contracts. It has been so on the mere question of the authority of the deceased partner to enter into a stipulation in favor of his heir, that he should be admitted into the partnership upon the death of the ancestor. The law, as held formerly on this subject, may be found fully stated in 3 Kent Com. (6th ed.) 56. We can readily perceive a distinction between the case where the heir asserts a right against a surviving partner to be admitted into the copartnership, and the case of a person who is seeking to enforce a claim against the deceased partner by reason of his contract with the surviving partner to continue the copartnership, and making such contract the basis of a claim to

share *pro rata* with his creditors who were such at the time of the decease of such partner.

Cases have arisen upon provisions for such continuance of the copartnership contained solely in the testament of a deceased partner.    To some extent certainly effect has been given to such provision, as in the case of *Hankey* v. *Hammock*, Buck, 210, and 1 Cooke B. L. 67.    That case was supposed to be much qualified, if not overruled, by the case of *Ex parte Garland*, 10 Ves. 110, in which the evils of giving effect to such provisions are strongly stated by Lord Eldon, and a decided opinion expressed against allowing debts thus arising to be made a charge upon the general assets.    See also *M'Neillie* v. *Acton*, 4 DeGex, Macn. & Gord. 752.

A similar opinion to that stated in *Ex parte Garland* was held by the supreme court of Connecticut in the case of *Pitkin* v. *Pitkin*, 7 Conn. 307, in which it was held, that the general assets of a deceased partner were not liable for debts of a creditor who became such after the death of the partner, although under the provisions of a will authorizing a continuance of the partnership after the decease of the testator.    *Edgar* v. *Cook*, 4 Alab. 588, is to the like effect.

It is however often stated in books of authority, and held in adjudicated cases, that by virtue of an express agreement made between the parties, a partnership may be continued after the death of one of the parties.    *Gratz* v. *Bayard*, 11 S. & R. 41.    *Scholefield* v. *Eichelberger*, 7 Pet. 586.    *Burwell* v. *Mandeville*, 2 How. 560.    Story on Part. § 201.    But there seems to be a strong disposition in the courts, in the cases cited, to confine the effects of such agreement to a lien upon the partnership assets.

Without going beyond this principle, or expressing any opinion further than upon the question arising upon the facts existing in the present case, the court are of opinion that the debts contracted after the death of Moody, and now sought to be allowed as debts to share *pro rata* in the estate of Moody with the debts existing against him at the time of his death, were properly rejected by the commissioners.

2. In the second case the appellant seeks also to have allowed, as claims against the estate of Moody, the first two items of his bill or account, which were contracted in the lifetime of Moody. As to these, the administrator of Moody replies that they have been fully paid and discharged by moneys received and credited to the firm on account of payments by Harrod, the survivor. The question is merely one of application of the payments. The court are of opinion that they must be taken to be moneys realized by Harrod from the assets of the late firm in his hands, and generally on the account of Harrod & Moody, and must be applied to the oldest debts. Thus applied, the payments will exceed the two items.                  *Decisions affirmed.*