David Skilling et al., Appellants, *v.* F. W. Bollman et al., Respondents.

### May 21, 1878.

1. The delivery of a bill of lading is a symbolical delivery of the property represented by it; and the person who, by a legal title, first gets one of a set of bills of lading executed in triplicate, has the right to the property, and need do nothing further to secure his title.

2. The delivery of the bill of lading, indorsed to the order of the consignor's factor, accompanied with drafts of the consignor upon the factor for the proceeds, is a complete delivery of the goods, and divests the title of the consignor and vests it in the person to whom the bill of lading was delivered; and, as against a subsequent innocent purchaser of the goods for value, this title will not be affected by the mere fact that no advance or acceptance was expressly made upon the particular consignment.

Appeal from St. Louis Circuit Court.

*Reversed and remanded.*

Finkelnburg & Rassieur and G. Pollard, for appellants : The delivery of the bill of lading, together with the drafts drawn against the proceeds, transferred the title to the goods.—*Railroad Co.* v. *Phillips*, 60 Ill. 190 ; *Rail-*

*road Co.* v. *Wagner*, 65 Ill. 197; *Broadwell* v. *Howard*,
77 Ill. 305; *Railroad Co.* v. *Kerr*, 49 Ill. 458; *Bank* v.
*Dearborn*, 115 Mass. 219; *Bank* v. *Bailey*, 115 Mass. 228;
*Newcomb* v. *Railroad Co.*, 115 Mass. 230; *Bank* v.
*Crocker*, 111 Mass. 163. It is not necessary that the bill
of lading be indorsed. — *Bank* v. *Homeyer*, 45 Mo. 145;
*Peters* v. *Elliott*, 78 Ill. 321. The person who first gets
the bill of lading (though one of a set of three) gets the
property which it represents; any subsequent dealing with
the others of the set is subordinate to the rights passed by
that one. — *Barber* v. *Meyerstine*, L. R. 4 H. L. Cas. 317;
*Caldwell* v. *Ball*, 1 Durnf. & E. 205; *Valle* v. *Cerre*, 36
Mo. 587.

NOBLE & ORRICK and W. J. SHARMAN, for respondents,
cited 1 Pars. on Ship. & Ad. 192, 195; Dan. Neg. Inst.
632; *Newsom* v. *Thornton*, 6 East, 17.

BAKEWELL, J., delivered the opinion of the court.

This is an action to recover the value of one hundred and
fifty barrels of highwines, valued at $11,000, which it is
alleged the defendants had converted to their own use.
The answer is a general denial. There was a verdict and
judgment for defendants. Plaintiffs appeal.

Plaintiffs were private bankers in Beardstown, Illinois,
and the Beardstown Distilling Company was an incorpo-
rated institution, carrying on a distillery business at the
same place. In 1874, the company and plaintiffs agreed
in writing that plaintiffs would advance money to the com-
pany for the purposes of their business, to secure which
advances all the bills of lading for highwines shipped were
to be made out to plaintiffs and delivered to them. After
the limit named in the agreement was reached, plaintiffs
continued their advances under an oral understanding to
the same effect, which was carried out until a mortgage
was made, in May, 1875, to secure to plaintiffs $12,000;
and in February, 1876, a deed, intended by the parties as

a mortgage, though absolute on its face, was made of the whole property to plaintiffs; the consideration named was $18,000, which was $4,373 less than the actual amount due plaintiffs for advances to the company at that time. Afterwards $2,000 more was advanced; and on February 22d, $12,750 more, to buy stamps for government tax on two hundred barrels of highwines, of which the one hundred and fifty barrels in question in this suit were a part, making the unsecured debt of the distillery company to plaintiffs $19,123. One Blumb was secretary of the distillery company, and Sheerer was its vice-president, and would seem to have been the general manager, at least of all the outside business of the company. Blumb drew checks and notes, and indorsed bills of lading; and it would seem that he alone did so in all transactions with plaintiffs, and that there was an understanding between plaintiffs and the company that this should be so. On February 25th, the distillery company shipped for St. Louis, by boat, the two hundred barrels of highwines for which they had purchased stamps with plaintiffs' money, and the boat executed bills of lading in triplicate to the order of the distillery company, of which two were delivered to Blumb. This was in the afternoon, the boat leaving at four o'clock; and Blumb locked one copy of the bill of lading in his desk, of which Sheerer had also a key. Blumb went to the plaintiffs' bank next morning, shortly after it opened, which was at nine o'clock, and delivered to plaintiffs one copy of the bill of lading, indorsed to Gregory & Stagg, who were the regular factors of the distillery company at St. Louis; and at the same time delivered to plaintiffs two drafts on Gregory & Stagg, made by the distillery company to order of plaintiffs, for $7,000 each. The other copy of the bill of lading, Blumb supposed to be still in his desk; but, in fact, Sheerer had taken it out without being observed, and gone to St. Louis in the same boat with the whiskey, pretending to his business associates that he was only going a few miles down the

river to buy grain for their business. The bill of lading which Sheerer thus took with him was not indorsed by Blumb.

Sheerer arrived in St. Louis on the boat, on the morning of the next day, February 26th, and at once proceeded to find a business friend to introduce him to defendants. The acting member of the firm was not in when Sheerer first called, at about a quarter before nine; he returned in half an hour, and sometime shortly after nine o'clock sold to defendants the one hundred barrels of whiskey in question, at a cent or two below the market price, which were delivered to the defendants from the boat about ten o'clock. At the time the whiskey was purchased, Bollman, one of the defendants, asked Sheerer if he had the bill of lading; and Sheerer thereupon drew the bill of lading from his pocket, showed it, and put it back. This was on Saturday. On Monday following, the defendants bought of Sheerer fifty-nine barrels of the same lot. No bill of lading was ever delivered to defendants. The clerk of the boat delivered the whiskey to defendants on the direction of Sheerer and his written orders indorsed upon the bill of lading which the boat had kept. As soon as Sheerer received pay for the last lot, of fifty barrels, on Monday, he absconded with the money that he had received.

The bill of lading and drafts received by plaintiffs were mailed by them on the same day to their correspondent at St. Louis. Gregory & Stagg refused to accept, and the drafts were returned protested. At the time plaintiffs received the drafts from the distillery company, they credited the company with the amount, $14,000, on the general account.

It is claimed by plaintiffs that if the Beardstown Distillery Company was the owner of these highwines at the time the bill of lading and drafts were delivered to plaintiffs on February 26th, and the bill was delivered with the drafts and as security for the drafts, for value, the title to

the highwines then passed out of the distillery company and passed to plaintiffs, subject to the acceptance of the drafts by the consignees. The court refused so to instruct, but declared the law to be, that in order that title should pass to plaintiffs under the bill of lading, as against defendants, there must have been an advance made by plaintiffs to the distillery company at the time, or else notice to defendants that there was another bill of lading outstanding and delivered to plaintiffs for the same goods, at the time of defendants' purchase.

Since the case of *Lickbarrow* v. *Mason*, the common-law rule is well settled that the property of goods *in transitu* passes by indorsement of the bill of lading to a *bonâ fide* holder for a valuable consideration. 2 H. Black. 257; 4 Bro. P. C. 57. And where several bills of lading are signed, the person who first gets one by legal title from the owner or shipper has the right to the consignment. This is also the well-settled rule of the common law. *Caldwell* v. *Ball*, 1 Durnf. & E. 121. The person who first gets one bill of lading out of a set of three, gets the property it represents, and need do nothing more to secure his title. It is a symbolical delivery, and has the effect of an actual delivery of the property, neither less nor more. Unless where the bill of lading is made negotiable by statute, the indorsement and transfer of the bill of lading can convey to the indorsee or assignee no greater rights than those of the indorser or assignor; but such rights as the indorser or assignor has in the goods pass with the bill of lading, and nothing further need be done to insure the title of the assignee, which is then complete, and to which any subsequent dealing with the other bills of the set is subordinate. Benj. on Sales, 763; *Lickbarrow* v. *Mason*, Bro. P. C. 64. In *Meyerstein* v. *Barber*, 13 Jur. 1023, it was contended that, as between persons claiming goods hypothecated, as assignees of different bills of lading of the same set, the one who first obtained possession had perfected his security. But the

court held that there was nothing in this ; that the possession of the bill of lading was just as much as if the goods themselves had been taken ; and that it might as well be said that a second mortgagee, by perfecting his own estate, could get rid of the first mortgage.   Per Erle, C. J.

Neither is an indorsement on the bill of lading necessary to perfect the symbolical delivery of the property ; the transfer of the bill of lading, when intended to operate in the same manner as a direct delivery of the goods, will do. *Michigan Central R. Co.* v. *Phillips*, 60 Ill. 191 ; *Railroad Co.* v. *Wagner*, 65 Ill. 198.   Unquestionably the delivery of the bill of lading in the present case to plaintiffs, indorsed to the order of their factors in St. Louis, accompanied with drafts upon the factor for the proceeds, was as complete a transfer of the goods as if the bill of lading had been specially indorsed to plaintiffs.   Such an assignment completely divested the title of the consignor and vested it in the person to whom the bill of lading was delivered, with the drafts, for the purpose of passing title.   The simultaneous acts of the shipment of the whiskey, drawing and delivery of the drafts, and delivery of the bill of lading indorsed to the factors of the consignor, expressed the intention to transfer the goods to plaintiffs as security for the draft, and effected the object if it was in the power of the consignors, — that is, if the whiskey at the time was theirs to dispose of.   *Peters* v. *Elliott*, 78 Ill. 326.

It is, however, contended by respondents that, as against a subsequent purchaser for value without notice, no title passed to plaintiffs if these goods were taken as security for, or in part-payment of former advances.   The question as to the legal rights of plaintiffs, if before any prior transfer of the property by the consignors they obtained from them in payment, or as security for prior advances, a bill of lading whilst the goods were on board the boat, has been perfectly settled, to say the least, for nearly a hundred years.   If the legal title is in plaintiffs, defendants have, of

course, no case, unless they have a superior equity which bears down the letter of the law and enables defendants to retain the goods against the legal title of plaintiffs. If the law of the case is with plaintiffs, they cannot, of course, be beaten by defendants, unless there is some reason for saying that plaintiffs are not equitable holders of the bill of lading. Where the equity is equal between the parties, the legal title must prevail.

The testimony shows that nearly the full value of the drafts was advanced by plaintiffs to the consignors to purchase the government stamps put on this very whiskey, and without which it could not have been moved. The money of plaintiffs to the amount of nearly $13,000 was taken to buy the stamps placed on these barrels which on defendants' theory they ought to retain, and the whole debt of the consignors to plaintiffs was contracted on the faith of the agreement that all the whiskey manufactured by them should pass through plaintiffs' hands. So far as the equities of the case are concerned, it does not appear that those of the defendants are superior.

It is said by Kent (Comm., vol. 3, p. 308) that if the several parts of the bill of lading be indorsed to different persons, a competition may arise for the goods, and the rule generally is that if the equities be equal the property passes by the bill first indorsed. Parsons (on Shipping, 193) says: "Undoubtedly an indorsement and delivery of the bill of lading is binding only when it is made for a good consideration, and by a party having the right to indorse; and, we add, for a new consideration. For we hold the law to be that an indorsement of the bill, in payment or security of the previously existing debt of the consignee, is no bar against the consignor's right to stop the goods *in transitu*, unless the indorsee has in some way lost some valuable right or remedy by accepting this payment or security, which would, indeed, amount to a new security. And we should be disposed to extend this rule further, and say that

an indorsee only for such payment or security of a previous debt would, like an indorsee for no consideration, be unable to recover the goods as against one who for good consideration and in good faith subsequently acquired a title to the goods and possession of them, either as transferee or as attaching creditor." This view is entitled to respect, as that of a learned lawyer and careful author. But it derives no support from the cases cited in the note to the text, which are cases arising out of attempts on the part of a factor to pledge the goods of his principal in security for a debt of his own. Of course the bill of lading gives to the factor no greater power over the goods than he would derive from an actual possession of them. If he had the goods themselves he could not pledge, and he cannot pledge by the assignment of the bill of lading. The symbol has no greater operation to enable him to defraud his principal than has the actual possession. The assignment of the bill of lading, apart from all fraud, gives the indorsee an irrevocable, uncountermandible right to receive the goods, where meant as an assignment, but not where meant as a deposit by one who has no authority to do so. That is the doctrine of the cases cited by Professor Parsons, and that is the language of Lord Ellenborough in *Newsom* v. *Thornton*, 4 East, 17. That case was decided, not upon the ground that an assignment for prior advances passed no title to the bill of lading, but that a factor had no right to pledge the bill. The case was, that the holder of the bill of lading, the factor of the consignor, attempted to pledge the bill of lading on condition of advances to be made ; the advances were not made ; the pledgee claimed to hold the goods for former advances made by him to the factor ; and it was held that the factor had no power to pledge the goods of his principal by indorsement and delivery of the bill of lading. *Warner* v. *Martin*, 11 How. 209, is a similar case, and turns altogether upon the question of the power of a factor to pledge. Of course the right of a bailee under a bill of lading differs

very materially from that of a vendee. The bailee has no property in the goods, except such lien as he may have to the extent of his demand; but the indorsee or assignee for value, of a bill of lading, can on the bill of lading maintain trover for the goods, and the assignor's property in the goods is so completely gone that he has not even an insurable interest in them, as is observed by Buller, J., in *Lickbarrow* v. *Mason*.

In this State, it is held that the delivery of a bill of lading without indorsement, for value, transfers the property in the goods. *Davenport Bank* v. *Homeyer*, 45 Mo. 145. And in *Valle* v. *Cerre's Administrator*, 36 Mo. 588, it is said that whilst there can be no doubt that where acceptances have been given on the faith of the transfer of a bill of lading the assignee acquires such a property in the goods as no subsequent conveyance of the goods by the assignor can divest, where there has been no advance or acceptance expressly made upon the particular consignment, and the question is only of a general balance of accounts for previous advances, the case does not differ in principle so much as in the evidence required to establish the claim. Per Holmes, J. That was a case where a factor, who was in advance to the consignor $10,000 on general account, received the bill of lading and invoice of the goods by mail; whilst the goods were in transit the consignor failed, and the goods, on arrival, were attached by the creditors of the consignor, two days after the bill of lading was received. The factor, who had received the bill of lading, claimed a right to the goods superior to that of the attaching creditors, for his lien on general account; and it was held that he had a right to replevy the goods from the sheriff.

In the case at bar, the title of the plaintiffs was not, we think, in any way affected by the fact that no money was paid at the time the bill of lading was transferred to plaintiffs, and that the drafts on St. Louis were not dis-

counted by them. The antecedent liability of the distillery company to them was, we think, a sufficient consideration for the transfer, and, if no other bill of lading for the same goods had at that time been transferred for a valuable consideration, gave them a legal title to the goods.

The instructions given for defendants assume that there is evidence tending to show that the bill of lading which Sheerer took with him was assigned by him to defendants about the same time on Saturday morning that plaintiffs received the bill of lading and drafts. We find no such evidence in the record. Bollman says that Sheerer showed him the bill of lading, but that it was never given to him. The goods were delivered to defendants by the clerk of the boat, on orders made by Sheerer on the bill of lading which the clerk kept. It is necessary that the bill of lading be delivered in order to pass the goods; an indorsement without delivery, whatever effect it might have in this case in protecting the carrier, had none whatever upon the title of defendants. Dan. Neg. Inst., sect. 1743.

It is unnecessary more particularly to examine the instructions given and refused, and space forbids our doing it. From what has been said it is apparent that the case was given to the jury on what we regard as an erroneous theory of the law.

The judgment is reversed and the cause remanded. All the judges concur.