WILLIAM A. OBER ET AL., Respondents, *v.* INDIANAPOLIS AND ST. LOUIS RAILROAD COMPANY, Appellant.

December 12, 1882.

1. PARTNERSHIP — SURVIVOR AFTER DISSOLUTION. — The surviving member of a partnership succeeds to the firm's rights of action, notwithstanding its dissolution prior to the co-partner's death, the partnership business being yet unsettled.

2. MOTIONS — BILL OF EXCEPTIONS. — A motion is no part of the record unless made so by a bill of exceptions.

3. —— Motions can be brought to the knowledge of an appellate court only by a bill of exceptions.

4. LIABILITY OF COMMON CARRIERS. — A factor who has accepted a draft for goods consigned to him may maintain an action against the carrier for damages for a delay in carrying, though the delay is directed by the consignor after shipment.

5. COMMON CARRIERS — DAMAGES FOR DELAY. — The measure of damages in such an action is the advances made, expenses, and commissions, less the value of the goods when delivered.

APPEAL from the St. Louis Circuit Court, ADAMS, J.
*Reversed, and remanded nisi.*

L. B. VALLIANT, for the appellant : When a partnership is dissolved by mutual consent, and some months afterwards one of the former partners .dics, the remaining former partner does not thereby become the " surviving partner " of the firm. And in such event the surviving former partner cannot alone and as " surviving partner " sue for and collect a debt that was owing to the former firm, but he must be joined in such suit by the administrator of such deceased former partner. — *Mutual Savings Institution* v. *Enslin*, 37 Mo. 454 ; *Bredon* v. *Mutual Savings Institution*, 28 Mo. 181. The carrier was not liable in this action. — Hutch. on Car., sects. 720, 737 ; Redf. on Car., sects. 318, 320 ; Edwards on Bail. 561–563.

E. B. SHERZER, for the respondent : It is competent for plaintiff to sue the carrier in tort for breach of his common-law duty, and if there be a written contract modifying same, defendant must plead it. — *Lupe* v. *Railroad Co.*, 3 Mo. App. 77, 84, 85 ; *Clark* v. *Railroad Co.*, 64 Mo. 440, 446, 447. Having received the property for carriage, executed its receipt or bill of lading, it is estopped as against the parties who parted with their money on the faith thereof, from contradicting or disputing the duty by law, imposed under such receipt or contract. — *Armentrout* v. *Railroad Co.*, 1 Mo. App. 158, 162. The measure of damages was correctly stated. It is the difference in market value at place of destination, as and when, but for delay, property should have been received, and market value as received. — *Tucker* v. *Railroad Co.*, 50 Mo. 385 ; *Faulkner* v. *Railroad Co.*, 51 Mo. 311. The dissolution of partnership and subsequent death, does not the less, as to unadjusted matters, render survivor, surviving partner

under the law. — *Mudd* v. *Bast*, 34 Mo. 465 ; *Kinsler* v. *McCants*, 4 Rich. L. 46 ; *Strange* v. *Graham*, 56 Ala. 614 ; *Stillwell* v. *Gray*, 17 Ark. 473 ; *Shields* v. *Fuller*, 4 Wis. 102 ; *Clark* v. *Howe*, 25 Me. 560.

THOMPSON, J., delivered the opinion of the court.

This is an action against a common carrier for damages for delay in shipping goods which were consigned to the firm of which the plaintiff was a member, for sale and account. The plaintiff had a verdict and judgment for $800. We shall consider separately the substantial questions to which our attention is invited : —

1. The first of these questions relates to the propriety of the ruling of the court in refusing an instruction that the plaintiff could not recover. It is claimed that such an instruction ought to have been given, on the ground that the answer denied that the plaintiff was the surviving partner of the firm of W. A. Ober & Co., in which capacity he sues. The evidence shows that, after the transactions which form the subject of this suit, the firm of W. A. Ober & Co. was dissolved, and that, three or four months subsequently, William C. Rutland, who, with the plaintiff, constituted the firm, died. The defendant's contention is that, because the firm was dissolved by mutual consent prior to the death of Rutland, the plaintiff does not occupy the legal *status* of surviving partner of the firm, which he would have occupied if the firm had continued in existence until that time. We understand that the law is the other way. A partnership firm is not dissolved for all purposes until the business of the firm is wound up, its debts paid, and the remaining partnership property divided between the partners. The conventional dissolution of a partnership, which is usually agreed upon for the purpose of discontinuing business and going into liquidation, does not have any effect upon the ownership of the partnership property, unless the contract of dissolution so provides, a

thing which is not shown to have been the case here. *Mudd* v. *Bast*, 34 Mo. 465. This being so, the mere fact that the firm was dissolved some months prior to the death of Rutland, did not prevent the plaintiff from succeeding to the rights in action of the firm, including the right to maintain this suit. The residence of this firm was in Arkansas, and the question is to be determined according to the law of Arkansas. That this is the correct view of it is shown by the observations of the supreme court of that state in *Stillwell* v. *Gray* (17 Ark. 473, 475, 477). We do not understand that the case of *Bredow* v. *Mutual Savings Institution* (28 Mo. 181, and 37 Mo. 453) contains anything contrary to the general current of authority upon this point. On the contrary, it seems to us that that case is entirely in accordance with the foregoing statement of doctrine.

It is claimed that the court erred in overruling a motion to strike out certain parts of the plaintiff's reply. The first bill of exceptions shows that the defendant made such a motion, and that it was overruled; but it does not state what parts of the reply it was moved to strike out. What purports to have been the motion is copied at length into the transcript by the clerk; but this we cannot notice, for any purpose, without disregarding a rule of practice which has long been settled and constantly acted upon by the supreme court and by this court. *Jefferson City* v. *Opel*, 67 Mo. 394. As the purport of this motion is not, therefore, properly brought to our attention, we must presume that the court rightly overruled it.

3. It appeared in evidence that, on the third day of October, 1879, J. D. Ober & Co. delivered to the defendants, as common carriers, at Dorsey, Illinois, three hundred barrels of apples, and took a bill of lading therefor, which showed that the apples were consigned to W. A. Ober & Co., at Little Rock, and that they were to be shipped over the defendant's road to East St. Louis, Illinois, and there deliv-

ered to the Iron Mountain Railroad to complete the transit; that on the same day, J. D. Ober & Co. drew a draft on W. A. Ober & Co., for $450, and on the following day negotiated it, with the bill of lading attached, at a bank in St. Louis; that this draft, with the bill of lading, was sent forward to W. A. Ober & Co., at Little Rock, and was by them paid, on the 6th of October, and before the arrival of the apples; that the apples were shipped to W. A. Ober & Co., to be sold and accounted for by them as commission merchants, and that the draft was drawn upon them in pursuance of a previous arrangement between J. D. Ober & Co. and them, by which the firm were allowed to draw upon them against shipments of apples consigned to them for sale, at the rate of $1.50 per barrel. It also appeared that neither member of the firm of J. D. Ober & Co. was a member of the firm of W. A. Ober & Co.

The usual running time between Dorsey and East St. Louis was two hours. The apples were detained by the defendant at Dorsey for six days; but evidence was offered and excluded which tended to show that this was done at the request of J. D. Ober & Co. The apples were winter apples, and good keepers. Holes were cut in the barrels for ventilation, and the evidence tends to show that if they had been forwarded promptly, they would have arrived at Little Rock in good condition, and would have fetched, in that market, from $3.25 to $4.25 per barrel. The weather was warm, and before they left Dorsey, they had begun to rot. They left Dorsey on the 9th of October, and arrived at Little Rock eight days afterwards, in a greatly damaged condition. After being sorted and culled over so as to make them marketable, they were sold by W. A. Ober & Co. for $412.65 gross.

In our opinion, the statement of these facts, which we need not further elaborate, shows a clear liability on the part of the defendants to the plaintiff for the damages caused to W. A. Ober & Co. by this delay of these defend-

ants in shipping the apples after receiving them from J. D. Ober & Co. and issuing the bill of lading therefor, unless some other valid excuse for the delay appears than the advice or direction of J. D. Ober & Co. By the common law, which, in the absence of evidence upon the subject, we must presume to be in force in Illinois, this bill of lading was a negotiable instrument representing the title to the property named therein, which might be transferred from hand to hand by mere delivery, carrying to any transferee the title to the property. *Skilling* v. *Bollman*, 6 Mo. App. 76 ; s. c. affirmed, 73 Mo. 665. When J. D. Ober & Co. delivered the apples to the defendant and received this bill of lading therefor, they lost all control over them, except the legal right of stoppage *in transitu*. *Armentrout* v. *St. Louis*, *etc.*, *R. Co.*, 1 Mo. App. 158. The learned counsel for the defendants attempts to draw a distinction between the case where goods are sold to the consignee and the consignor delivers them to a carrier for shipment to the consignee, takes a bill of lading therefor, draws a draft on the consignee for the purchase-money, and, with the bill of lading attached, negotiates this draft; and a case like the one under consideration, where the goods are shipped to a factor for sale and account, and a draft, accompanied by the bill of lading, is drawn on the factor for an advance in pursuance of a previous arrangement. There is no such distinction in principle, so far as the rights of the consignee are concerned, nor can the case just cited be distinguished from the present case upon such a ground ; for there the draft was drawn on the commission merchants to whom the goods were consigned, as in this case. The circumstance that it was not drawn by the real owner of the goods, but by the party who had just sold them to the real owner, and that it was drawn for the purchase-money, made no difference. If such a distinction were admitted, it would unsettle all commercial transactions of this kind. As this court said in the case just cited : "Any other rule would

be destructive of commerce. What commission merchant would be safe in accepting drafts drawn against shipments? What bank would take bills of lading as collaterals, and make the necessary advance upon them, if the shipper, at will, could forward the bill of lading and detain the goods? If the carrier, in this instance, could have detained the goods at the request of the consignor, after the bill of lading was out, until the draft was heard from, he might, with equal safety to himself, have given back the goods to the shipper after the acceptance of the draft by the consignee." The rights of the consignee who receives the bill of lading of goods consigned to him, under an agreement with the consignor which entitles him to hold the goods as security for previous advances, or who receives a bill of lading accompanied by a draft drawn on him as a factor, in pursuance of such an arrangement for a present advance, are very clearly stated in the well-considered judgment of the supreme court in *Vallé* v. *Cerre* (36 Mo. 575). The reasoning of the supreme court in that case, as well as the authorities there cited, makes it clear that, when a factor or commission merchant to whom goods are shipped for sale and account, receives a bill of lading of the goods, issued by the carrier to whom they were delivered by the consignor, accompanied with a draft drawn upon him by the consignor, for an advance, he, by paying or accepting the draft according to its terms, acquires such a property in the goods as will enable him to maintain an action against the carrier for any damage to the goods caused by the negligence of the carrier, or by his failure to ship them promptly, according to the legal import of the bill of lading. But the extent of his recovery against the carrier must obviously depend upon the nature of his title to the property. This title is undoubtedly a complete legal title, such as would enable him to maintain an action of replevin for the possession of the goods themselves, or an action in the nature of an action of trover for damages for their conversion. But, beyond the ex-

tent of his own interest in the goods, which is represented by his commissions for selling them, or by any advances which he may have made to the consignor on account of them, his right is merely a representative right; and the consignor, or other person to whom he has to account for the balance of the proceeds of the sale of them, occupies, with reference to him, the substantial position of an equitable part owner. *Gibson* v. *Stevens*, 8 How. (U. S.) 389, 400, 401.

Thus, in the present case, when W. A. Ober & Co. paid the draft and received the bill of lading, there was a constructive delivery of the goods to them, and they became the full legal owners of them. But beyond the amount of their advances and commissions, they were not the equitable or beneficial owners, but J. D. Ober & Co., the consignors, were. Now, the defendant offered evidence tending to show that the delay which caused the injury to these goods was due to the act of the defendant's agent in complying with a request of J. D. Ober & Co., to hold the goods at Dorsey until through cars could be procured on the Iron Mountain Railroad. This the court excluded, and we think erroneously. If this were the fact, it would be clearly inequitable to allow the plaintiff to recover any damages in excess of the interest of W. A. Ober & Co. in the goods, since any damages in excess of this would go to J. D. Ober & Co., and they would thus be allowed to derive an advantage from their own wrong.

The result produced by the ruling of the court in excluding this evidence, may be thus stated. The petition states the value of the apples to have been $1,400. The plaintiff's testimony shows that his firm advanced $450, the amount of the draft; $214 for freight, $15 for drayage, and $33.65 for assorting, etc., making a total advance of $712.65; that they realized from the sale of the apples $412.65, which would leave them short on their advances, $300. As the amount to which they were entitled by way

of commissions is not shown, this $300, with interest from the sixth day of October, 1879, the day on which they paid the draft, would be the extent of the amount which they would be entitled to recover. But they have here recovered a verdict for $800 ; $500 of which, less their commissions and interest, must go in their account to J. D. Ober & Co. ; and if the defendants could have proved what they offered to prove, J. D. Ober & Co. would be allowed to this extent to recover damages from the defendants for obeying their own instructions. This is contrary to justice, and it cannot be the law. For the error of the court in excluding this evidence, we must reverse the judgment. If the plaintiff will, within ten days, remit, of this judgment, all in excess of $300, with interest from the sixth day of October, 1879, he may have a judgment in this court for this amount. This will be a concession on his part that, on another trial, the defendant will be able to prove what it offered to prove, and what the court refused to allow it to prove, as above stated. If the plaintiff does not choose to file this *remittitur*, the cause will be remanded for further proceedings, in conformity with this opinion. All the judges concur.