Rand, Receiver, *v.* Wright *et al.*

Filed May 16, 1895.

---

No. 15,418.

RAND, RECEIVER, *v.* WRIGHT ET AL.

PARTNERSHIP.—*Extension and Renewal.—When Right of Action Passes Along with the Renewal.—Right of Receiver to Bring Suit on.*—Where articles of copartnership, under the name and style of the Indiana Banking Company, provided, among other things, that the partnership should continue for five years (from 1875 to 1880), with a proviso that the partnership might be extended after such time, "as may be deemed best for the interests of the owners of the said banking company"; and, in accordance with such proviso, it was extended, in

Rand, Receiver, *v.* Wright *et al.*

1880, for two years, with all its rights, credits and assets of every description, including stock and all choses in action, without dissolution or withdrawal of capital or assets of any kind; and, at the end of the period of extension (1882), the term of copartnership was made to continue for three years, the widow and administratrix of one of the deceased partners (according to the articles of agreement) having taken his place in the copartnership in 1881, during the first period of extension, and during the same period one of the surviving partners wishing to retire from the firm transferred (according to the articles of agreement) all his rights and interest therein to the remaining partners, who continued the business uninterrupted and without dissolution,—a right of action which accrued to the company in 1878 passed along with the renewals of the company, and, upon the appointment of a receiver for the new firm, all the rights of the company at once passed to him, in trust for the partners and their creditors, including the authority to bring suit on such cause of action.

From the Marion Superior Court.

*S. Claypool, W. A. Ketcham, C. Martindale,* and *S. M. Shepard,* for appellants.

*W. H. H. Miller, F. Winter,* and *J. B. Elam, McDonald, Butler & Snow,* for appellee.

HOWARD, J.—This action was brought by the appellant, as receiver of the Indiana Banking Company, to recover $214,200, with interest from February 28, 1878, out of which sum, it is alleged, the said Banking Company was, on said date, defrauded by appellees in the sale by them to said company of certain stock of the First National Bank of Indianapolis, No. 55.

The error assigned on this appeal is the sustaining of a demurrer to the complaint. The complaint is of great length, covering about one hundred closely written pages. No question seems to be raised as to the merits of the action itself, the only matter discussed by counsel being whether the suit could be brought in the name of the receiver. We shall, therefore, set out only such of the facts alleged as seem necessary to consider, in order to decide the question before us.

From the year 1865 there had existed in the city of Indianapolis a copartnership engaged in the banking business under the firm name and style of the Indiana Banking Company. On the first day of March, 1875, the members of this firm, to wit: Frederick A. W. Davis, William H. Morrison, John L. Ketcham, Jane M. Ketcham, William Needham, Peter J. Banta, Peter Ditmars and Samuel Miller entered into a written agreement of copartnership, under said name and style of the Indiana Banking Company, with a paid-up capital of $300,000. This partnership was to continue until the first day of March, 1880, with a proviso in the agreement that the same might be extended after said date "as may be deemed best for the interest of the owners of said banking company."

The following provisions were also made: "No partner shall sell his shares or interest in this bank to any person whatever without first offering said interest to the other partners.

"And in case of the death of any one of the partners, his or her heirs, or legal representatives, shall occupy the same place in the copartnership as was occupied by the partner; and it shall not be competent for such heirs or legal representatives to withdraw such capital until the expiration of the term of partnership.

"The president, cashier and assistant cashier are the only persons authorized to bind the partners in this banking company; and their official signatures are hereby declared legitimate and binding upon all."

It was, during the term of the partnership so formed, that the alleged fraud was practiced upon said banking company by the appellees, New and Wright, then president and vice president of said First National Bank of Indianapolis, No. 55, the details of which alleged fraud are set out very fully in the complaint.

It is further alleged, that at the close of said partnership period of five years, "the said partners, in accordance with said partnership articles, upon consultation, agreed to and did extend and continue said partnership for the further period of two years, with all its rights, credits and assets of every description, including said stock and all choses in action, and without any dissolution or withdrawal of capital or assets of any kind or description."

The parties who entered into the agreement for extending the term for two years, from March 1, 1880, to March 1, 1882, were the same persons who entered into the original articles of copartnership. The articles of agreement for the extension did not themselves differ essentially from the original articles, at least so far as any question before us is concerned.

During the period of extension, on March 18, 1881, one of the partners, William H. Morrison, died intestate. Thereupon, his widow, Mary Morrison, qualified as administratrix of his estate; and, in accordance with the agreements of copartnership, took his place in said firm.

Thereafter, Mary Morrison and the surviving partners continued the business of the firm unchanged, until a short time before the expiration of the period of extension; when, it is alleged, that, "for the purpose of continuing said business with all its rights, credits, assets, choses in action, duties and obligations of every nature and description, and to avoid a dissolution and winding up of the affairs of the said company, and to the end that said Samuel Miller might be permitted to retire from said business, and the said Mary Morrison become individually interested therein, without any interruption or break in said partnership business, and that the partnership assets of every kind and description should re-

main and continue in the business under the same name and style,'' a new agreement of copartnership, and also one of sale and transfer of the interest of Samuel Miller were executed.

By these last agreements, the name of the partnership continued as before, the Indiana Banking Company. The capital stock remained the same, $300,000, the Miller stock being purchased in proportional parts by the other members. Mary Morrison continued to represent her husband's estate as administratrix and widow, and also became a stockholder in her own right in the redistribution of the whole stock. The board of control was continued as before. The term of the partnership was made to continue three years from March 1, 1882, with provision for extending the term as before. Provision was also made, as before, for purchasing by remaining members the stock of any member who should wish to retire, as was also the provision in relation to the death of a member.

In all other respects, the provisions of these articles were such as to continue, as near as might be, the original company, according to the terms of the first articles of agreement, the sole substantial change being that Samuel Miller's interest passed to the remaining partners, while Mary Morrison took her husband's place. The sum total interests of the company remained identical.

In the agreement of purchase of the Miller interest the remaining partners assumed ''all debts and liabilities of the former firm,'' it being ''declared to be the true intent and meaning'' of the agreement that the remaining partners ''will pay and save said Miller harmless from all debts and liabilities for which he is legally liable as a partner.''

In his agreement of sale to his partners, Miller stated

that the conveyance was of "all my right, title, claim and interest in and to all the estate, property, assets and business of the firm and partnership known as the Indiana Banking Company, * * * this transfer covering all real estate owned by "said company" or by any person or persons in trust for [it], and also all judgments, notes, accounts, bills, credits, choses in action and property of any and all kinds and description" owned by said firm or in which it has any interest.

The transfer of interest and title from the old company to the new could hardly be more complete. No element of value whatever was left out; the property, rights and interests of the Indiana Banking Company were identical in the old and the new company.

It is further alleged, "that thenceforth said last-named parties continued to carry on said banking business without interruption under the same firm name and without other change, and with the same assets, rights and credits and choses in action, until the 9th day of August, 1883, when, by reason of the depletion of its assets and the impairment of its credit, resulting from and occasioned by the wrongful and deceitful practices and false and fraudulent statements of the defendants, New and Wright, in connection with the purchase by said bank, of said defendants as hereinbefore set forth, of the stock of said First National Bank, No. 55, it was compelled to and did close its doors and suspended said business; and, thereafter, on the 15th day of August, 1883, "in an action in the superior court of Marion County, brought by the partners by way of settlement of their affairs, said court then and there having full and complete jurisdiction of the subject-matter of said action and the parties thereto, one John Landers was duly appointed receiver of all and singular the assets of said Indiana Banking Company, including all its rights, credits and choses in

action; and the said Landers qualified and entered upon the discharge of his duties as such receiver, and thereafter, to wit, on the 8th day of October, 1883, said John Landers was by said superior court removed from his said position as such receiver and John C. S. Harrison was duly appointed receiver in his place and stead, and duly qualified and entered upon the discharge of his duties. And afterwards, to wit, on the 23d day of February, 1884, said Harrison, as such receiver, was by said superior court in said cause * * * ordered and directed to institute in his own name as such receiver, for the use and benefit of the creditors of said Indiana Banking Company, a suit against the said defendants, New and Wright, on account of the frauds practiced in the sale of said stock, and in accordance with said order said Harrison, as such receiver, did on the 23d day of February, 1884, institute the action herein.''

The resignation of Harrison as receiver and the appointment of the appellant in his stead, and the substitution of appellant as plaintiff in this suit are finally alleged.

The contention of appellees is that there are in this case at least three copartnerships, each known by the name of the Indiana Banking Company; the first organized for five years, under the articles of 1875; the second organized for two years, under the articles of 1880; and the third organized for three years, under the articles of 1882; that the right of action against appellees, if any, originated in February, 1878, during the existence of and in favor of the first copartnership; that no assignment of said right of action from the first banking company to the third is shown, nor are any facts alleged from which such assignment may be inferred; that it is not, therefore, shown that such right of action ever passed to the last banking company, of which ap-

pellant is receiver, and, therefore, that he can not be the proper party to bring this suit.

We think it very clear, from the facts set out in the complaint, that there were, at most, but two companies known as the Indiana Banking Company. The first articles provided for a term of five years, with the right of continuance for two years longer, if the partners, at the end of the five years, so elected. These partners, being the same identical partners who entered into the original agreement, did elect to continue the partnership, and they did actually so continue the partnership. The partners were the same, the capital stock the same, the government by a board of control the same.

We think it too plain, from a reading of the complaint, that the right of action which accrued to the company in 1878 passed along with the renewal of the company, quite as much as the money in the vaults or any other property or right of the original copartnership. To the assertion that such right of action did not pass with the other property, it might well be asked: Whom did it go to? What became of it? It was not a right of person, but a right of property, and could not fail even if all the partners had died; but, on the contrary, all the original partners were living and still present in the continued company, with their combined property and property rights and interest unchanged and unimpaired.

By the death of William H. Morrison, in March, 1881, however, there can be little doubt, as we think, that the law would have worked a dissolution of the partnership were it not for the provision to the contrary in the articles of agreement. *Schmidt* v. *Archer*, 113 Ind. 365, and authorities cited.

By that provision, Mary Morrison, widow and administratrix of William H. Morrison, took his place in the company, and the partnership was continued under the

board of control until March 1, 1882. Only the capital stock and partnership property of William H. Morrison already in the company at his death, however, were controlled by this provision, and not the remainder of his estate. The authorities cited by appellees make this sufficiently apparent. Story Partnership, section 201; *Burwell* v. *Mandeville's Exr.*, 2 How. 560; *Stewart* v. *Robinson*, 115 N. Y. 328. See, also, *Vincent* v. *Martin*, 79 Ala. 540; *Stanwood* v. *Owen*, 80 Mass. 195.

On the formation of the last partnership, in February, 1882, by the terms of the agreement as set out in the complaint, we think it very clear that while a new partnership was entered into, which continued from March 1, 1882, until the insolvency and appointment of the receiver, in August, 1883; yet all the capital stock, property and assets of every description belonging to the first partnership, including the right of action in this case, were transferred, unchanged and unimpaired, to the new company in the same fullness of title as they were held by the old company.

One of the partners having died, and another having retired after disposing of all his interest to the remaining partners, these surviving partners succeeded to the full right of disposing of the partnership property and closing up its business. *Willson* v. *Nicholson*, 61 Ind. 241; *Anderson* v. *Ackerman*, 88 Ind. 481; *Valentine* v. *Wylor*, 123 Ind. 47; *Strange* v. *Graham*, 56 Ala. 614; *Stillwell* v. *Gray*, 17 Ark. 473; *Ober* v. *Indianapolis, etc., R. R. Co.*, 13 Mo. App. 81; *Kinsler* v. *McCants*, 4 Rich. (S. C.) 46; Parsons Partnership, 440; Lindley Partnership, 341; Bates Partnership, section 718, and other sections and notes.

The surviving partners in this case deemed it best to join with the representative of the deceased partner in continuing the company, and to that end, with her, en-

tered into new articles of agreement. All the old interests were retained in the new firm; they could go nowhere else for there was no owner of any interest in the old firm who was not a member of the new firm, retaining his proportionate share in the new firm as he did in the old. Only creditors, or some of the partners themselves, to protect endangered interests, could disturb the new firm in the full and free exercise of every right enjoyed by the old firm. This the partners did do, as they had a right to do, in the action brought by them, in which the receiver was appointed. Even the partners, however, could not complain of this action and of the appointment of the receiver, which was the result of their own deliberate act. Neither could the creditors complain of it, for its sole object was, by the appointment of a receiver, to collect and dispose of the assets of the firm and so secure the rights of the creditors themselves.

As a matter of fact there is no one who could rightfully complain either of the formation of the new company, and the transfer to it of all property and property rights of the old company, or of the appointment of a receiver to take possession of all property and collect whatever was due the company. And as a matter of fact, also, there is no one attempting to complain of any of these things except the appellees, against whom the company and the receiver claim the damages involved in this action.

It is idle to say, in this condition of affairs, that the right of action in question, which had accrued to the old firm, did not pass fully and unimpaired to the new firm and from the firm itself to its receiver when appointed. There was no place elsewhere it could rest.

The partners in the new company had assumed the liabilities of those in the old, even as a consolidated railroad company does those of the component companies;

and they were, in like manner, also entitled to enjoy all the properties, rights and interests of the old partners. *Louisville, etc., R. W. Co.* v. *Boney,* 117 Ind. 501; *Cleveland, etc., R. W. Co.* v. *Prewitt,* 134 Ind. 557.

But when the receiver was appointed for the new firm, on petition of one or more of the partners, all the rights of the firm at once passed to him, in trust for them and their creditors, including, of course, authority to bring this suit.

The judgment is reversed, with instructions to the court in general term to direct the court in special term to overrule the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.

Filed Jan. 16, 1895; petition for rehearing overruled May 3, 1895.