JOSEPH S. ELKINTON & another *vs.* ELIZA F. BOOTH & another.

Worcester. October 6, 1886. — February 23, 1887.

A firm doing business under the name of the S. Company, B., Agent, sold their business, and dissolved their firm, publishing notice of the dissolution in a newspaper. The business was subsequently carried on under the same name as before. A customer of the old firm sold and delivered goods to the S. Company after the change. *Held,* in an action by him against the members of the old firm for the price of the goods, that he could recover, if he sold the goods, without notice of the dissolution, relying on the responsibility of the members of the old firm, although at the time of the dissolution the firm was not indebted to him.

CONTRACT, by persons doing business in Philadelphia in the State of Pennsylvania, against Eliza F. Booth and Margaret Kidd, copartners, doing business under the firm name of the Spring Brook Mills Company, on an account annexed, for goods sold and delivered in 1883. Writ dated May 17, 1884. Answer, a general denial.

Trial in the Superior Court, before *Bacon,* J., who allowed a bill of exceptions, in substance as follows:

There was evidence tending to show that the business of manufacturing woollen goods had been carried on by the defendants and other persons, as stated below, at Millville, in the town of Blackstone, from August 20, 1881, to January 1, 1884, under the name of the Spring Brook Mills Company, B. Booth, Agent; that the defendants carried on said business under said name from August 20, 1881, to October 8, 1882, when they contended that they sold said business to Benjamin Brynes and John D. Brynes, who continued to carry on said business under the same name from that time to January 1, 1884; that the purchasers had nothing to do personally with the running of the mill, but the business was conducted the same as before, with B. Booth as agent, and with the same employees; and that neither the plaintiffs nor their agents ever knew the purchasers or heard of them, or either of them, until a short time before this trial.

It also appeared that the plaintiffs had dealt with the Spring Brook Mills Company during all of said time, and that at the

time the defendants sold out, or pretended to sell out, as aforesaid, the Spring Brook Mills Company did not owe the plaintiffs anything.

It also appeared in evidence, that, at the time the defendants went into business, they filed married women's certificates in the town clerk's office at Blackstone, showing that they were doing business on their separate accounts, as copartners, under the name of the Spring Brook Mills Company, B. Booth, Agent; that, at the time they sold said business, they filed a statement in said town clerk's office, showing that they had ceased to do business; and that the defendants properly advertised the dissolution of their firm in a newspaper called the Uxbridge Compendium, which was the newspaper published nearest to the place where said business was carried on. There was no evidence as to whether the plaintiffs ever knew that the defendants had ever had any interest in the Spring Brook Mills Company, except what might be inferred from the filing of said married women's certificates, and the other surrounding circumstances, until after the goods had all been delivered upon which this action was brought. None of the plaintiffs testified at the trial.

The plaintiffs contended that there had been no dissolution of the partnership, and also that they had received no notice of the dissolution of the firm consisting of the defendants; and these questions were in issue before the jury when the defendants asked the judge to rule, that, if the plaintiffs never knew that the defendants were the responsible parties in the Spring Brook Mills Company, and the Spring Brook Mills Company did not owe them anything, at the time the defendants ceased to do business, then the plaintiffs were not entitled to actual notice of the dissolution of the firm consisting of the defendants.

The judge refused to rule as requested, and instructed the jury upon the question of notice as follows: "It appears by the evidence in this case that the plaintiffs, with that degree of carelessness and negligence which some tradesmen indulge in, had never ascertained that Eliza C. Booth and Margaret Kidd were really the Spring Brook Mills Company, and did not know it. I instruct you that that makes no difference. If they had been dealing with the Spring Brook Mills Company, consisting of these parties, and the Spring Brook Mills Company, while they were so

dealing, paid its bills, the defendants had no right to step out and leave the plaintiffs in the lurch, with irresponsible parties put in their place, without giving notice. And if you find that they had been dealing with the Spring Brook Mills Company while it was made up of the defendants, then they had no right to step out and put other persons in their place without giving actual notice to the persons with whom they had been dealing, and without giving actual notice to the plaintiffs."

The jury returned a verdict for the plaintiffs in the full amount claimed; and the defendants alleged exceptions to the refusal to rule as requested, and to the instructions given.

*F. W. Blackmer & E. H. Vaughan*, for the defendants.

*B. W. Potter*, for the plaintiffs.

C. ALLEN, J. The defendants asked the court to rule that, if the plaintiffs never knew that the defendants were the responsible parties in the Spring Brook Mills Company, and if that company did not owe them anything at the time the defendants ceased to do business, then the plaintiffs were not entitled to actual notice of the dissolution of the firm consisting of the defendants. This request was properly refused. The two particulars mentioned, taken by themselves alone, were not sufficient and decisive to exonerate the defendants from the duty of giving notice to the plaintiffs.

It was not necessary that the plaintiffs should have known the names of the defendants. They might, from their own experience and otherwise, have become satisfied that the Spring Brook Mills Company contained, and was managed by, persons, as members of the firm, who were men of means, as well as regular and prompt in paying all their debts, although they never had ascertained the names of such persons. The defendants did not contend that during their membership of the firm they were merely dormant partners. Their request for instructions implies the contrary. They carried on the business. The plaintiffs might well be content to continue to give credit to the firm, if they believed it remained as it had been; and it could not properly be ruled, as matter of law, that the defendants owed no duty of giving notice to the plaintiffs of their withdrawal from the firm, merely because the plaintiffs did not know that these individuals were the responsible parties in the firm.

Nor is the fact that the company did not owe anything to the plaintiffs at the time of the defendant's withdrawal the test of their duty to give notice of such withdrawal. So narrow a rule as this might have the effect to defraud those who were giving credit to the company habitually and regularly, if nothing happened to be due on the particular day when the defendants withdrew.

The instructions which are stated in the bill of exceptions have reference to the defendant's request, and are limited to "the question of notice," that is, to the question of whether the facts assumed would exonerate the defendants from the duty of giving notice to the plaintiffs; and they are to the effect that the defendants were not so exonerated, if the plaintiffs had been dealing with the Spring Brook Mills Company, consisting of the defendants, and the company had paid its bills. This was sufficient, in respect to the matters to which the attention of the judge was called by the particular instructions which were asked.

The instructions to the jury in other respects are not stated. Of course the plaintiffs could not recover without showing that they sold the goods to the Spring Brook Mills Company under the belief that the same persons who had formerly made that company worthy of credit still remained in it, and in reliance upon their responsibility. This was the ground of the decision in *Rich* v. *Crandall*, 142 Mass. 117, where it was said that it did not appear that the plaintiffs were misled by the defendant's conduct or silence into believing him to be the real party in interest in conducting the business. See also *Scarf* v. *Jardine*, 7 App. Cas. 345, where it was held that the liability of a partner who has withdrawn is a liability by estoppel only. It does not appear that there was any omission to instruct the jury properly on this point; and, in the opinion of a majority of the court, the entry must be,                    *Exceptions overruled.*