VERA F. WARNER *vs.* MICHAEL A. MODANO & another.

Suffolk. October 7, 8, 1959. — March 7, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Partnership*, Debts, Dissolution, Dormant partner. *Words*, "Business reputation."

G. L. c. 108A, § 16, was inapplicable to charge a secret and inactive partner in a market with liability for goods sold and delivered to it after dissolution of the partnership where it did not appear that such partner himself made any representations to the sellers that he was a partner in the market, or that any representations he made were ever communicated to them, and it did appear that none of them was "aware of . . . [his] relationship" to the market. [442]

G. L. c. 108A, § 35 (2) (b), means that, viewing most favorably to creditors the evidence of the business reputation of a partnership, a partner's activity, and the knowledge of others of his participation prior to dissolution of the partnership, it cannot reasonably be concluded that there was a causal relationship between his participation and such reputation. [443]

The defendant in a suit, a former partner in a market, was not liable personally for goods sold and delivered to the market after dissolution of the partnership by creditors who had sold goods on credit to the market prior thereto and had no knowledge or notice of the dissolution where it appeared that the defendant had been unknown to the creditors as a partner prior to the dissolution and the evidence required a

ruling that the defendant was, within G. L. c. 108A, § 35 (2) (b), "so far unknown and inactive in partnership affairs that the business reputation of . . . [the market from the time the partnership was formed to its dissolution] could not . . . [reasonably be found] to have been in any degree due to his connection with it." [443]

The "business reputation" of a partnership within G. L. c. 108A, § 35 (2) (b), is its standing in the business community. [444]

BILL IN EQUITY, filed in the Superior Court on September 1, 1955.

The suit was heard by *Lurie, J.*

*Robert J. Sherer,* for the defendant Beale.

*Joseph Kruger, (James G. Walsh, Jr.,* with him,) for the plaintiff.

WHITTEMORE, J. This is a bill in equity filed September 1, 1955, by the assignee of six trade accounts for goods sold and delivered to the Napoli Super Market alleged to have been conducted by the defendants Beale and Modano as a partnership. The bill seeks to reach and apply a note and mortgage secured by the assets of the market given by Modano to Beale, and was taken as confessed against Modano. A final decree was entered establishing all the claims of the plaintiff, ordering the defendants to pay them, and restraining Beale from foreclosing the mortgage until they had been paid.

There was evidence that Beale, who is a physician, learned in the latter part of May, 1953, while attending Modano, that he was having difficulty with one Acconcia, a copartner with whom he was conducting the market in Hyde Park. Beale lent Modano $3,500, of which $3,200 was paid to a creditor of the market, and Modano gave Beale his note for $4,000. Modano also joined Beale in an agreement giving to the latter an option to become a partner in the market by discharging the indebtedness. On or about June 20, 1953, Modano purchased Acconcia's interest in the market for $3,500 and filed a certificate under G. L. c. 110, § 5, with the city clerk of Boston that he, Modano, was conducting the market. Beale on May 21, 1953, had filed a business certificate as the proprietor of Your Market, elsewhere in Hyde Park.

The judge found that Beale and Modano on or about

June 20, 1953, entered into a secret partnership in the operation of the market, that thereafter Beale engaged employees, appeared regularly to examine the books, and on one occasion warned a salesman that if the manager of the market placed an order with him, he, Beale, would not be responsible for the bill. The judge also found that on another occasion, on April 12, 1954, Beale wrote the manager purporting to discharge him "from my employment" and signed the letter "Frederick F. Beale, Co-Partner." On September 28, 1954, Modano and Beale entered into a written agreement "that the status existing between us by which we were partners to each other but not partners as to third persons is hereby dissolved . . . . This is our termination of the partnership agreement." The judge further found that all the claims in suit arose after Beale became a partner, that none of these creditors was aware of the relationship of Beale to the market, and that notice of the dissolution was never published in a newspaper of general circulation in the place "at which the partnership was regularly carried on." But he found that Beale, both by words spoken and written and by his conduct, represented himself as a partner in the market and that he made such representations in a public manner. The only evidence of public representations is that summed up in the prior findings. The judge stated, "I cannot find that the activities of Beale were so far unknown and were so inactive that the business reputation of the partnership cannot be said to have been in any degree due to Beale's connection with it." He ruled that Beale was liable on all six accounts as though he were an active member of the partnership under G. L. c. 108A, § 16 (1) (a).

Beale even though only a secret and inactive partner was liable as undisclosed principal to one who sold goods to the partnership while he remained a partner. G. L. c. 108A, §§ 9, 15. *Grosvenor* v. *Lloyd*, 1 Met. 19, 20. *Pratt* v. *Langdon*, 12 Allen, 544. Crane, Partnership (2d ed.) §§ 24, 53.

Four of the six debts sued upon, however, came into existence after the agreement of dissolution of September 28,

1954, although the creditors had sold goods on credit to "Napoli Super Market" prior thereto. Representatives of three of these creditors testified that they never knew Beale. The only evidence of the knowledge of the other is (1) the answer "[o]nly by hearsay" to the question put to the man who became credit manager of that creditor in 1957: "As credit manager you have never heard of Beale, have you?" (2) the ledger card of that creditor, which read "Napoli Grocery Company, M. Modano," and (3) the assignment which designated the account as "Modano d/b/a Napoli Super Market." General Laws c. 108A, § 16,[1] relied on below, is merely declaratory of the common law principle of estoppel, *Standard Oil Co. of N. Y.* v. *Henderson,* 265 Mass. 322, 326, and is inapplicable to the four post-dissolution debts, for by its terms one representing himself to be a partner is liable only "to any . . . person to whom such representation has been made." There is no finding that Beale himself made any representations to the creditors that he was a partner, or that any representations he made were ever communicated to them. On the contrary the judge found that "none of the assignors . . . [was] aware of the relationship of Beale to the Napoli Super Market."

The assignee relies on G. L. c. 108A, § 35.[2] Under this

[1] "(1) When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made. . . ."

[2] This section provides in part, "(1) After dissolution a partner can bind the partnership except as provided in paragraph (3) [inapplicable] . . . (b) By any transaction which would bind the partnership if dissolution had not taken place, provided the other party to the transaction (I) Had extended credit to the partnership prior to dissolution and had no knowledge or notice of the dissolution; or (II) Though he had not so extended credit, had nevertheless known of the partnership prior to dissolution, and, having no knowledge or notice of dissolution, the fact of dissolution has not been advertised . . . . (2) The liability of a partner under paragraph (1 b) shall be satisfied out of partnership assets alone when such partner had been prior to dissolution (a) Unknown as a partner to . . . [the creditor]; and (b) So far unknown and inactive in partnership affairs that the business reputation of the partnership could not be said to have been in any degree due to his connection with it."

section the partnership remains liable to creditors which "extended credit to the partnership prior to dissolution and had no knowledge or notice of the dissolution," but, even so, the liability of the former partner is to be satisfied from partnership assets alone if he was sufficiently unknown and inactive to make subsection (2) applicable.

The evidence being reported we are to decide the case according to our judgment of the facts, accepting the findings below unless we determine that they are plainly wrong. *Cowden* v. *Cutting,* 339 Mass. 164.

We hold that the qualification of reasonableness is implied in § 35 (2) (b). It must be determined whether, viewing most favorably for the creditors the evidence of the business reputation of the partnership, the retired partner's activity and the knowledge that others had of his participation, it could reasonably be concluded that there was a causal relationship between his participation and that reputation. We need not determine the extent of the function of the fact finder in applying § 35 (2) (b) for, in our view, on the evidence and the subsidiary facts found, the ruling is required that Beale was "[s]o far unknown and inactive in partnership affairs that the business reputation of . . . [Napoli Super Market from June, 1953, to September, 1954] could not . . . [reasonably be found] to have been in any degree due to his connection with it." *Kelley* v. *Hurlburt,* 5 Cowen (N. Y.) 534, 535. See *Hornaday* v. *Cowgill,* 54 Ind. App. 631; Crane, Partnership (2d ed.) p. 442. Compare the cases which are said to underlie § 35 (Burdick, Partnership [3d ed.] pp. 267–269), and where, semble, the retired partner had had more participation, *Elkinton* v. *Booth,* 143 Mass. 479; *Elmira Iron & Steel Rolling Mill Co.* v. *Harris,* 124 N. Y. 280; *Griggs & Co.* v. *Levy,* 63 Misc. (N. Y.) 348; *Shamburg* v. *Ruggles,* 83 Pa. 148.

There is no evidence that anyone in the business community who extended credit knew that there was a partnership, and no evidence that anyone outside the market, other than the salesman to whom Beale spoke, heard of the remark which implied Beale's proprietorship or of inferences drawn

therefrom.  There was no direct evidence of the business reputation of the market.  The only evidence of the knowledge of proprietorship had by the businesses which extended credit came from witnesses who supported the accounts attached to the assignments as reflecting the books.  This evidence tended to show that only Modano was known as connected with Napoli Super Market in the offices of four of the creditors, and no one was known as proprietor of the market in the offices of the other two.

There was evidence that three of the six creditors whose accounts had been assigned, and perhaps a fourth, had done business with the market prior to June, 1953, when Beale was not a partner and another person was.  It is a necessary conclusion from the business certificate that anyone who was sufficiently concerned about credit to make inquiry at the city clerk's office or of a responsible credit reporter after about June 20, 1953, would have learned that Modano claimed to be the only proprietor.  The evidence showed that Beale never ordered merchandise, did not work in the market nor direct its operations, even when Modano was in the hospital, had nothing to do with keeping the books and "sign[ed] nothing."  There was evidence that about the time of the dissolution "business was going down," "was very quiet," and there was no evidence to suggest that the business had responded favorably to Beale's connection with it, if that is material, which we need not decide.  It is a reasonable conclusion that some persons in the business community may have heard of Beale's connection.  But reputation depends on general knowledge.  See *F. W. Stock & Sons* v. *Dellapenna,* 217 Mass. 503, 506; *Clark* v. *Eastern Mass. St. Ry.* 254 Mass. 441, 443; *Carson* v. *Canning,* 180 Mass. 461, 463; Wigmore, Evidence (3d ed.) §§ 261 (3), 1580 et seq., 1612.  "Business reputation" reflects standing in the business community.  *Denny* v. *Dana,* 2 Cush. 160, 169–170.  *Heywood* v. *Reed,* 4 Gray, 574, 579–580.  Wigmore, Evidence (3d ed.) § 1616.

We assume but need not decide that there was an extension of credit to the partnership notwithstanding that the

creditors did not know that Napoli Super Market was a partnership. See cases and texts cited above, page 294; Reports and Drafts of Commissioners on Uniform State Laws, 1906–1912, Draft C, § 39 (2) (c), p. 74, § 9 (1), p. 43; Draft B, § 38 (2) (c), p. 29, § 9 (1), p. 10; Draft recommended for adoption (1914), Proceedings of the 24–25 Annual Conferences of the Commissioners, 1914–1915, 24th meeting, pp. 299–300; Criticism in 28 Harv. L. Rev. 762, 783–784, which resulted in change to present wording, 29 Harv. L. Rev. 291, 311–312.

The final decree is to be modified by reducing the obligation of the defendant Beale to the plaintiff, as assignee, to the claims of Northern Fruit Company, Inc., and James Ferrera & Sons, Inc., totaling $2,787.11, together with interest, and costs amounting to $86.50, and as so modified is affirmed.

*So ordered.*